HAROLD E. KRANSKY AND ALOHA L. KRANSKY, HUS-
BAND AND WIFE, PLAINTIFFS AND RESPONDENTS, *v.* WILLIAM
HENSLEIGH, DEFENDANT AND APPELLANT.

No. 10948.

Submitted November 4, 1965. Decided December 17, 1965.

409 P.2d 537.

Gene Huntley (argued), Baker, for appellant.

Lucas & Jardine, Charles W. Jardine (argued), Miles City, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law after trial before the court without a jury. The action was for unlawful detainer brought against defendant William Hensleigh.

In 1960, Marie Hensleigh, wife of William Hensleigh bought, in her own name, a multiple dwelling building which contains the apartment here in question. According to the testimony of Cora Elizabeth Weeding, the mother of Marie Hensleigh, her daughter had borrowed the necessary capital from a local bank. However, appellant claims the purchase was made with funds he had furnished his wife. In either event the record title was in the name of Marie Hensleigh solely, and the trial court so found.

Mr. and Mrs. Hensleigh lived in the building until 1962, at which time they separated. After that time the appellant oc-

cupied the main-floor apartment, the most desirable in the building, with the remainder being leased to private individuals. At no time did the appellant exercise any management or control over the leased apartments. At all times it was his wife who performed the necessary duties of paying taxes and insurance, collecting rent, renting apartments, answering complaints, and telling the tenants, in general, what they could or could not do. The appellant did nothing with the property which would indicate to the public he was owner of the real estate. He was totally unaware there existed a mortgage against the premises, or even that the business venture was losing money. In all fairness to the appellant however, it must be noted that at this time he was afflicted with multiple sclerosis, but no place in the record is it indicated the disease would have prevented him from taking any interest in the management of the property.

On October 5, 1962, after his wife had left him, appellant filed, with the Custer County Clerk, an instrument in which he claimed an interest in the property stating:

"WILLIAM H. HENSLEIGH

TO

PUBLIC

NOTICE OF CLAIM OF INTEREST

Dated: Oct. 1, 1962
Filed: Oct. 5, 1962,
    at 10:50 A.M.
Document No. 5936

——0——

NOTICE IS HEREBY GIVEN, that I, the undersigned, William H. Hensleigh, of 1215 Palmer, Miles City, Montana, do hereby claim an undivided one-half (½) interest in and to all of the following described property, situate in the County of Custer, State of Montana, to-wit:

W½ of Lot 7 and All of Lot 8 in Block 81 of the Town, now City of Miles City, Custer County, Montana, according to the official plat and survey thereof by the Northern Pacific Railroad Company, on file and of rec-

ord in the office of the County Clerk and Recorder of Custer County, Montana [and other property] together with the improvements situate on all of the above described property.

/S/ William H. Hensleigh Acknowledged in Custer County, Montana, Oct. 1, 1962, by William H. Hensleigh, before Daniel G. Kelly, Notary Public for State of Montana. Commission expires.................... Notarial Seal."

The instrument did not indicate the nature of the appellant's claim, set forth facts upon which to base the claim, nor did it specify any individuals against whom it might lie.

The record further indicates Mrs. Weeding had an outstanding mortgage on the property which was in default; that she was hesitant to foreclose on the property, but that she was reluctant to put more money into the project unless she had title thereto. As a result, title was transferred to her, by her daughter, in November of 1963.

In December of the same year the respondents entered into a contract for deed for the purchase of real estate. They were told Mr. Hensleigh was occupying one of the apartments, and that he did not pay any rent for the privilege. Nevertheless, the respondents made the agreement to purchase, and did purchase, the property. The transaction was completed without inquiring of Mr. Hensleigh as to any interest he might have in the property, and without seeing the interior of his apartment.

On February 1, 1964, Mrs. Kransky requested of Mr. Hensleigh the rent she had stipulated in a notice served on the appellant a few weeks earlier. Mr. Hensleigh replied with the accusation he owned the building, and therefore need not pay rent. A second notice requiring the appellant to give up possession of the apartment, or face an unlawful detainer action, was served March 2, 1964.

The respondents, in the lower court, obtained a judgment for the premises, as well as treble rent for damages. This appeal followed.

490

The appellant maintains the complaint, on its face, indicates a landlord-tenant relationship did not exist, and therefore should be dismissed. His question restated is, simply, whether the landlord-tenant relation was ever created.

Whenever the unlawful detainer statutes, sections 93-9701, R.C.M.1947, et seq., are brought into operation it is the rule that such action may only prevail where the relation of landlord-tenant exists. Doyle v. Mullaney, 89 Mont. 20, 295 P. 760 (1931); Centennial Brewing Co. v. Rouleau, 49 Mont. 490, 143 P. 969 (1914). In reviewing the present factual situation it appears inescapably obvious a landlord-tenant relation was in existence at the inception of the suit.

The Kranskys were *bona fide* purchasers, for value, and without notice as will be more fully considered later. Since the Kranskys owned the building, and were in reality landlords as to all the tenants, they had the right of either accepting the appellant as a continuing tenant or a trespasser. State ex rel. Needham v. Justice Court, etc., 119 Mont. 89, 171 P.2d 351 (1946); 32 Am.Jur., Landlord and Tenant, § 919, p. 779.

"No particular form of words * * * is necessary to create the relationship of landlord and tenant or the obligation to pay rent. The occupancy of premises by one person with the consent or permission of the owner, or with the consent of the person entitled to assert a right to the possession of the premises, creates between the parties the relation of landlord and tenant, and in the absence of an agreement or circumstances indicating a contrary intent, the law will imply an agreement on the part of the tenant to pay the reasonable value for his use and occupation." 32 Am.Jur., Landlord and Tenant, § 430, p. 349. That is, an implied contract may be created which yields the necessary foundation for a landlord and tenant relationship. It is apparent the Kranskys elected to treat the appellant as a tenant, therefore availing themselves of the use of the unlawful detainer statutes. The notice to pay rent, served upon the actual occupant of the newly purchased apartment house, is sufficient to support this view.

Appellant, in his reply brief, took a different tack to the above-specified error. Therein was presented the question of whether a complaint, which is fatally defective, can be aided by a pre-trial order which covers the deficiency. In the instant case, it does not appear the complaint was fatally defective, thus the question is not properly before the court.

The second specification of error is that the lower court erred in failing to find for the appellant. Again we find no merit in appellant's argument. Appellant states in his brief that "there never was any discussion or contract of any kind between the plaintiffs or either of them and the defendant from the time plaintiffs bought the property in December of 1963 until February of 1964, when on inquiry, defendant told plaintiffs he owned the whole property." If by contract appellant has in mind a contract for lease, then again we are brought back to the first specification of error, which has already been discussed. No express contract for lease is required, as appellant would have us believe, as an implied contract will suffice. 32 Am.Jur., Landlord and Tenant § 24, p. 46. See also Smith v. Royal Ins. Co., (9th Cir.1940) 111 F.2d 667, 670, 130 A.L.R. 812, where the court states, "Like other contracts, a lease may be implied from the circumstances and the conduct of the parties." The circumstances and conduct of the parties in the present case indicates an implied lease was in existence.

The last specification of error stipulated the lower court was incorrect in concluding the respondents purchased the property without notice of appellant's claim.

Appellant's argument takes two courses: (1) the instrument filed on October 5, 1962, is sufficient to give the necessary notice of an adverse claim to a prospective purchaser; and (2) the occupancy of the apartment, alone, is sufficient notice of the claimed interest.

The filed claim of interest was not adequate to constitute constructive notice to respondents of appellant's claimed interest in the property. The appellant was a foreigner to the title, and thus there was no legal reason for the filed instru-

ment. The nature of the claim was not set forth, no facts to support the claim were indicated, and there is no indication as to whom the claim is against. It is a general rule that an instrument which is not entitled to be recorded, even though recorded, is no more notice to third parties than one which is unrecorded. Doering v. Selby, 75 Mont. 416, 423, 244 P. 485 (1926). It therefore cannot operate as constructive notice of any claim. If Mr. Hensleigh wished to exert an appropriate claim against the property he should have proceeded through the normal legal channels, and filed his lis pendens as required by statute, which he did not do. Section 73-101, R.C.M.1947, states, "Any instrument or judgment, affecting the title to or possession of real property, may be recorded under this chapter." In the instant case, the instrument was not sufficient to have any effect on the title or possession of the real property, and therefore may not be viewed as a cloud thereon. It is only a self-serving declaration or assertion having no force or effect. The case of Nickerson v. Loud, 115 Mass. 94 (1874), gives ancient support to the above view. See also: Amick v. Gauley Coal Land Co., 119 W.Va. 485, 194 S.E. 268 (1937), and Horton v. Matheny, 72 Ohio App. 287, 51 N.E.2d 41 (1943).

Mr. Hensleigh's occupancy of the apartment also creates no cloud on the title secured by respondents. Where possession is to give constructive notice of an adverse claim such possession must be open, notorious, unambiguous, and not likely to be misunderstood or misconstrued. 55 Am.Jur., Extent and Nature of Possession, § 716, p. 1090. Such possession must be sufficient to put the purchaser on guard, thus making inquiry a duty. The "visible state of things" must be such as to indicate an inconsistency in the professed title-holder's title. See generally 2 A.L.R.2d 857 (1948). Such was not the present case. Mrs. Weeding, although not in possession of the premises, was in control and management of the apartment complex. Her son-in-law, the appellant, was a foreigner to the chain of title, and at no time exercised any authority over the building. In light of the close family relationship,

which was known to the respondents, we do not find it unusual for the appellant to be living in one of the apartments free of charge. Therefore, we can find no reason for respondents to have been put to the duty of inquiry. Certainly, when an individual is purchasing an apartment building he is not required to approach every tenant to determine whether he has an interest in the premises.

The lower's court's judgment is therefore affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, JOHN C. HARRISON and ADAIR concur.