In re Kye TROUT, Jr., Debtor.

Phillip D. ARMSTRONG, Trustee of the Estate of Kye Trout, Jr., Plaintiff,

v.

Mary S. TROUT, Defendant.

Bankruptcy No. 87–05075.
Adv. No. 91–7057.

United States Bankruptcy Court,
D. North Dakota.

March 19, 1992.

Phillip D. Armstrong, Minot, N.D., trustee & atty. for plaintiff.

Lawrence A. Dopson, Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This is an action commenced by complaint filed July 22, 1991, by the plaintiff, Phillip D. Armstrong, trustee of the estate of Kye Trout, Jr.. The case presents a contest between the trustee and the defendant, Mary Trout, the former wife of the Debtor. Mary claims she has a sole possessory interest in the residential property located in Flathead County, Montana under the provisions of an unrecorded quit claim deed. The trustee seeks to recover the alleged joint property interest of Kye Trout pursuant to 11 U.S.C. § 541 and 11 U.S.C. § 544, wherein the trustee believes his interest, as a bona fide purchaser, in the estate is superior to that of Mary Trout, and therefore is entitled to sell the entire premises, including Mary's alleged joint in-terest, in order to realize one-half of the value of the property under 11 U.S.C. § 363(h).

The parties have agreed to a waiver of trial and accordingly have submitted independent briefs; a joint stipulation of facts; along with the relevant exhibits, transcripts, and documentation.

### Findings of Fact

Kye and Mary Trout, husband and wife, jointly owned two adjoining parcels of residential real property, known as Tracts A and B, on Whitefish Lake in Flathead County, Montana, to wit:

That portion of Lots 1, 2 and 3 of Block 2 of Lake Park Addition to Whitefish, Montana, according to the plat thereof on file and of record in the office of the Clerk and Recorder of Flathead County, Montana, more particularly described as follows:

Beginning at the Southeasterly corner of Lot 4 of Block 2 of said Lake Park Addition; thence

North 50° 55′ East 166.2 feet to a point on the Easterly boundary of said Lot 4; thence South 44° 55′ East 165.9 feet to a point, and to the low water line of Whitefish Lake; thence

South 35° 25′ West 37.5 feet along the low water line of Whitefish Lake to a point; thence

South 10° 25′ West 37.5 feet along the low water line of Whitefish Lake to a point; thence

North 69° 8′ West 230.72 feet to the place of beginning;

Commencing at the southeasterly corner of Lot 4, Block 2 of Lake Park Addition to Whitefish; thence

North 50° 55′ East 166.2 feet to a point on the easterly boundary of said Lot 4 and the true place of beginning; thence

South 43° 55′ East 165.9 feet to a point and to the low water line of Whitefish Lake; thence

North 59° 20′ East 104 feet more or less and along the low water line of Whitefish Lake to a point; thence

North 11° 01' West 203.9 feet more or less and along low water line of Whitefish Lake to a point which is also the northeasterly corner of said Lot 4, thence South 50° 55' West 211.8 feet to the place of beginning.

Tract A, the larger of the neighboring parcels, is unimproved. A residence is situated on Tract B. At the commencement of the bankruptcy filing on January 21, 1987, the value of Tracts A and B were $160,-000.00 and $122,000.00 respectively. Mary has offered no competing valuation nor did she contest the validity of the appraisal.

Kye and Mary purchased Tract B as joint tenants through a warranty deed from John Von Derheide dated June 29, 1970, and recorded on July 18, 1972. Tract A was also acquired in joint tenancy by Kye and Mary on a contract for deed from Howard Streich on August 15, 1970; the warranty deed was executed on the same date. The warranty deed, however, was not recorded by Mary until October 18, 1990, after the final payment on the contract for deed was made.

On January 7, 1976, Kye and Mary were divorced. A property settlement agreement between the Trouts was incorporated in the divorce decree entered by the District Court of Toole County, Montana, which provided that the parties were to own the Whitefish Lake property jointly, but Mary was granted the exclusive right to possession of the premises, until her remarriage. In the decree, Kye was further ordered to pay all taxes, insurance, maintenance and repairs, present mortgages, and other expenses related to the upkeep of the said property. Mary is currently 77 years old and has not remarried. Since the divorce decree, Mary has retained sole and exclusive possession of the Whitefish Lake property, and it has been her only home during that period.

After the divorce Kye became indebted to Mary in the amount of $65,000.00. The debt was evidenced by a November 10, 1982, promissory note in the amount $35,-000.00 and an April 20, 1983, note in the amount of $30,000.00, which were consequently consolidated into a $65,000.00 re-newal note on March 20, 1984. The renewal note was never paid. In January 1985, Kye Trout executed, before a notary, and delivered a quit claim deed to the Whitefish Lake property in favor of Mary Trout in consideration of the cancellation of his outstanding indebtedness to her. The deed was not recorded by Mary until March 31, 1987, approximately two months after Kye Trout filed for his Chapter 11 relief.

In his Chapter 11 petition, Kye did not claim the Whitefish Lake property as an asset of his estate. Mary Trout filed a claim for the remaining unpaid obligations stemming from the 1976 divorce decree; the amount she paid on the contract for deed; the property taxes she paid on the Whitefish Lake residence; and the costs for the general maintenance and upkeep of the premises. Since the filing of the bankruptcy proceeding, Mary has made payments of $10,143.13 in satisfaction of the Streich contract for deed and paid $18,-626.90 for taxes on the Whitefish Lake property. The Chapter 11 case was subsequently converted to a Chapter 7 on August 15, 1989, and a trustee was appointed to administer the estate.

## Conclusions of Law

The trustee's complaint is premised on section 363(h) of the Bankruptcy Code which empowers the trustee to sell the estate's interest in jointly owned property as well as the co-owner's interest in jointly owned property. The applicability of section 363(h) is, however, contingent upon whether the estate has an interest, if any, in the jointly owned property within the confines of 11 U.S.C. §§ 544 and 541.

The United States Supreme Court has held: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such results should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *United States v. Butner,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, Montana law is controlling in determining the Debtor's legal

or equitable interest in the Whitefish Lake property.

### 1.

■ Section 544(a) of the Bankruptcy Code, the strong arm provision, grants the trustee power to avoid transfers of property in the bankruptcy estate. Section 544(a)(3) specifically allows the trustee to avoid transfers that would be avoidable by a bona fide purchaser at the commencement of the bankruptcy filing irrespective of whether such a purchaser exists and without regard to any knowledge of the trustee. A hypothetical bona fide purchaser may be defined as:

A person who

(1) at the instant the petition is filed, purchases from the debtor;

(2) for value;

(3) in good faith;

(4) without actual knowledge of any defect or limitation in title;

(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

(7) who as of the moment of purchase, take all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

*In re Gurs,* 27 B.R. 163, 165 (Bankr. 9th Cir.1983). Mary Trout, however, contends that the trustee could not avoid Kye's transfer of his interest to her in the Whitefish Lake property because he had constructive notice of her ownership interest, and therefore was not a bona fide purchaser. Accordingly, the question is whether the circumstances are sufficient to put the trustee, as a hypothetical purchaser, on inquiry of Mary's interest in the Whitefish Lake property.

■ Under Montana law, a conveyance of real property is not valid against any subsequent purchaser of the said property, who in good faith and for a valuable consideration records first. In addition, a good faith purchaser who records first prevails over a prior transferee who fails to record. Mont.Code Ann. §§ 70–20–303 and 70–20–304. However, Montana also recognizes that constructive notice is present when an individual has "actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact ... in which, by prosecuting such inquiry, he might have learned such facts." Mont. Code Ann. § 1–1–217(2). Thus, any constructive notice of a prior unrecorded transfer would put a subsequent purchaser outside the protection of the recording acts.

■ The Montana Supreme Court in *Rase v. Castle Mount. Ranch, Inc.,* 193 Mont. 209, 631 P.2d 680, (1981), noted that "[w]hen there appears possession of land by persons other than the record holder, which possession is inconsistent with the record title, there is a duty of inquiry imposed upon a purchaser of the land." *Id.* 631 P.2d at 685. Other Montana decisions have adopted similar approaches. *Clayton v. Atlantic Richfield Co.,* 221 Mont. 166, 717 P.2d 558 (1986); *Kransky v. Hensleigh,* 146 Mont. 486, 409 P.2d 537 (1965). The Ninth Circuit, addressing the issue of constructive notice in conjunction with section 544(a)(3), stated that section 544(a)(3) gives the trustee "the rights of a hypothetical bona fide purchaser. The language of the section renders the trustee's or any creditor's knowledge irrelevant. It does not, however, make irrelevant notice constructively given by open possession any more than it would make irrelevant the constructive notice given by recorded instruments that might evidence a competing claim of title to the real property in question." *In re Probasco,* 839 F.2d 1352, 1354–55 (9th Cir.1988). *See also, McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982).

The issue as to whether or not a trustee had constructive notice of a debtor's former wife's property interests when she was in sole possession of the premises, but failed to perfect her interests by recordation, has not been addressed by the court before. However, other bankruptcy courts have examined this issue. In *In re Costell,* 75 B.R. 348 (Bankr.N.D.Ohio 1987), the

court noted that the wife's possession of property would not provide constructive notice where her possession is consistent with the record title, and therefore does not give rise to a duty to further inquire as to the ownership interest of the parties.

The court in *In re Heinig,* 64 B.R. 456 (Bankr.S.D.Cal.1986), applying California's constructive notice law, which provides that clear and open possession of real property generally constitutes constructive notice to subsequent purchasers of the rights of the party in possession, held that despite the non-debtor's failure to record her interest in the subject property, the trustee does not take priority over the rights of the non-debtor under section 544(a)(3) where she was in clear and open possession of the property for almost six years.

Upon reviewing the facts of the instant case, the court finds that a prudent person would have questioned the true ownership of the premises in dispute. At the commencement of the bankruptcy case, the record at the recording office shows Mary as a joint tenant and wife of Kye Trout, which is inconsistent with Mary's sole possession of the property. The mere fact that the property was owned jointly, by a husband and wife, should have instantly alerted a purchaser to inquire further into the ownership interest of the property, such as who and where the other joint tenant is, what percentage of the ownership is for sale, whether a divorce may have occurred, and if so, whether there was a divorce settlement. From such basic inquiries, the trustee would have discovered that Kye and Mary had been divorced several years earlier and that Mary was granted sole possession of the Whitefish Lake property pursuant to their divorce decree. The trustee would have also ascertained that Mary was the only person in open possession and sole owner of the Whitefish Lake property at the time of the bankruptcy filing. The trustee would have further realized that the record holders of the property are inconsistent with the individual who was in actual possession. No evidence produced suggests that Kye had lived on the premises or that he was physically connected with the property since the finalization of the divorce in 1976. In fact, Kye's bankruptcy petition reveals that he was residing in Bismarck, North Dakota when he filed for bankruptcy relief. A prudent person armed with the knowledge that Mary was the only individual in open possession of the property and that such possession is inconsistent with the record title would have inquired as to her claimed interests. Therefore, the trustee may not avoid Kye Trout's transfer of his interest in the Whitefish Lake property to Mary Trout since he was not a bona fide purchaser.

■ In light of the fact that the trustee failed to meet the requirements of a bona fide purchaser and the fact Kye Trout had already divested whatever interest he may have had in the Whitefish Lake property to Mary Trout prior to the commencement of the bankruptcy case, the sale of the property under section 363(h) is impermissible since the said section is clear on its face that the trustee may only sell the estate's interest in property. The estate can procure no more interest in the Whitefish Lake property than what Kye had before the bankruptcy petition. 11 U.S.C. § 541(a)(1).

2.

Even if the court found that the trustee acquired an interest in the Whitefish Lake property and even assuming that the property is owned jointly, the trustee would still not prevail under the mandate of section 363(h).

Section 363(h) provides as follows:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize sig-

nificantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

■The first element requires the trustee to demonstrate that the partition of the property between joint tenants is impracticable in order to sell the jointly owned property. The court is flabbergasted as to why the trustee in his brief would argue that "partition, may not be impracticable as required," when he has the burden of establishing that the partition of the jointly owned property is impracticable. In any event, the court believes that because the property is a single family dwelling and the co-owners are divorced, there is no pragmatic method of partition. *In re Addario*, 53 B.R. 335 (Bankr.D.Mass.1985); *In re Ivey*, 10 B.R. 230, (Bankr.N.D.Ga.1981). Accordingly, the first element is satisfied.

■ The second element also appears to have been met. It is generally accepted that a sale of the estate's undivided one-half interest would generate substantially less than a sale of property free of the owner's interest because of the chilling effect it has on prospective purchasers of the property, especially when the co-owner could continue to live on the property. *See, e.g., In re Griffin*, 123 B.R. 933 (Bankr. S.D.Fla.1991). In the absence of contrary evidence to this general view the second requirement of section 363(h) has been complied with.

■ The third element dictates that the benefit to the bankruptcy estate from the proposed sale must outweigh any detriment to other co-owners of the property. This determination is fact intensive, of course. Several courts have recognized that non-economic, emotional, or psychological detriment may be considered in apply-ing section 363(h)(3). In *In re Persky*, 78 B.R. 657, 665 (Bankr.E.D.N.Y.1987), the court defined "detriment" to include not only economic hardship, but also any loss, harm, injury, or prejudice resulting from the involuntary displacement.

The court in *Griffin, supra,* ruled that the detriment to the non-debtor spouse outweighed the minimal benefit to the estate since the spouse would suffer from the economic and emotional effects of being involuntarily displaced from her residence of almost fourteen years. In another case, *Matter of Spain*, 85 B.R. 874 (Bankr. N.D.Ala.1988), the court concluded that the debtor and his family would suffer the trauma of being torn from their home should the residence be sold.

Other courts have expressed similar sentiments. The case of *In re Coombs*, 86 B.R. 314 (Bankr.D.Mass.1988), involved the co-owner, non-debtor wife who relies on the assistance of a wheelchair for mobility. The court found that the sale of the property and subsequent move would cause the wife inherent psychological stress and physical difficulties in adapting to new surroundings suitable for an individual with her physical disability. Accordingly, the court denied the sale of the property pursuant to section 363(h).

In the case of *In re Levenhar*, 30 B.R. 976 (Bankr.E.D.N.Y.1983), the court took judicial notice of the poor rental market in the region and determined that forcing the debtor's wife out of her home might require a sharp reduction in her standard of living. The court also considered the fact that the wife had lived in the residence for a quarter of a century in concluding that the sale of the home would be too great a burden on the wife.

In the case at bar, the court finds that the sale of the property would create more of a detriment to Mary than a benefit to the estate. The court cannot ignore the fact that Mary paid over $29,000.00 in satisfaction of her property tax obligations and in satisfaction of the Streich contract for deed since the commencement of the bankruptcy case. Additionally, consider-

ation must be given to the reality that Mary is currently 77 years of age and probably retired. She has lived by herself in the Whitefish Lake residence since her divorce in 1976 and the sole owner of the said property since 1985. Given her age and the length of time she has remained on the residence, it is likely she intends to live out her golden years there. It is the court's opinion that being forced out of her home at this juncture would certainly cause Mary severe emotional and psychological damage. The court also recognizes that in practical terms pecuniary compensation may not always be a completely suitable substitute for the assurance of having a roof over one's head. This seems particularly true in the instant case.

Some courts have, however, concluded that the benefit to the estate will outweigh the detriment to the co-owner where the co-owner has the right of first refusal, pursuant to 11 U.S.C. § 363(i), to purchase the property that would allow the co-owner to acquire new financing to procure the debtor's one-half interest in the property. *In re Oswald,* 90 B.R. 218 (Bankr.N.D.W.Va. 1988); *Addario, supra; Ivey, supra.* The facts in the present case, however, do not warrant a similar conclusion. It is doubtful that Mary Trout will be able to secure new financing to purchase the property given her age and income level, despite the amount of equity in the real estate. She is advanced in life and retired, without any substantial steady income; it is unlikely that any lending institution with this knowledge would be willing to entrust their funds with her. Hence, the right of first refusal affords no real protection to Mary. From the foregoing, the court finds that the detriment to Mary Trout in the proposed sale far outweighs the benefit to the estate.

The fourth and final requirement has been satisfied as the property is not used for utility purposes.

In sum, the court concludes that the plaintiff, Phillip D. Armstrong, Trustee of the Estate of Kye Trout, Jr., under the strong arm powers of 11 U.S.C. § 544(a)(3), had constructive notice placing him on in-

quiry which might have revealed the interest of the defendant, Mary S. Trout, in the Whitefish Lake property, situated in Flathead County, Montana. Therefore, the trustee did not take the Whitefish Lake property free of Mary Trout's interest. For the foregoing reasons IT IS ORDERED that the trustee's complaint be and is hereby in all things DISMISSED. Each party shall bear their own attorneys fees and costs.

JUDGMENT MAY BE ENTERED ACCORDINGLY.