THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STE-FAN WROBEL, Defendant-Appellant.

First District (3rd Division) No. 1—90—0701

Opinion filed September 30, 1994.

Richard J. Brzeczek, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago, for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Defendant, Stefan Wrobel, appeals from the judgment of the circuit court, sitting without a jury, finding him guilty of the criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3)) of M.J., the four-year-old granddaughter of defendant, for which he was sentenced to 36 months' probation and ordered to make restitution of $2,560. Jurisdiction is vested in this court pursuant to Supreme Court Rule 603. 134 Ill. 2d R. 603.

On appeal, defendant submits that: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in admitting hearsay testimony under the corroborative complaint and treating physician exceptions to the hearsay rule; (3) he was denied a fair trial in accordance with due process of law when the complaining

witness, a four-year-old child, was ruled competent to testify and then failed to answer questions on cross-examination; and (4) the trial court erred in failing to accept the presumption of innocence presented by the certain evidence.

For the reasons which follow, we reverse and vacate.

## FACTUAL BACKGROUND

On March 13, 1989, the trial court heard defendant's pretrial motion to determine the competency of M.J. to testify and found her to be competent. On June 21, 1989, the trial court heard the State's motion to determine the admissibility of hearsay testimony of four corroborative witnesses to the offense as provided for by section 115—10(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)) and over defendant's objection allowed such testimony. On that same date, the trial court also granted the State's motion to hold the testimony of five corroborative witnesses admissible at trial.

On October 31, 1989, trial began and the State called M.J. and attempted to ask her some preliminary questions to which she was almost totally unresponsive. The trial court allowed her testimony to be recessed until the next day.

The next witness called by the State was Carlene E., M.J.'s aunt and sister to M.J.'s mother, Raydene J. On direct examination, Carlene testified that at around 8 a.m. on October 26, 1987, M.J. said she wanted to play a game and asked her to first "tickle me here" and pointed to her neck. Next, M.J. said "tickle me here" and pointed to her stomach. Finally, M.J. said "tickle me here" and pointed to her vaginal area. Carlene recounted that she then told M.J. that no one was supposed to touch that area and asked her who had touched her there. M.J.'s reply was "Dziadzia." Carlene stated that "Dziadzia" in the Polish language means "grandfather" and that the only person that she knew who was known by that term was defendant. However, at a preliminary hearing held on June 21, 1989, Carlene stated under oath that she never asked M.J. who "tickled" her genital area. When cross-examined on this inconsistency by defense counsel, Carlene's response was "I really don't remember."

Carlene further testified that Raydene was present at this discussion and that as she was running late that morning, she told Raydene to "Look into it." Carlene then went to work.

Raydene testified that defendant was formerly her father-in-law. She was married to defendant's son Dariusz W. and they had a daughter, M.J. Raydene stated that on the date of the alleged incident M.J. was $2^1/2$ years old and that she, M.J. and Dariusz W. lived together

with her former in-laws. Dariusz and Raydene divorced and Raydene subsequently married Abel J., who adopted M.J.

Raydene further testified that she had observed her sister's conversation with M.J. However, she did not immediately look into this situation; rather, she questioned M.J. "sometime during the course of the day" when they were in her car. Raydene stated that during their conversation in the car she asked M.J. if anyone touched her "there" and M.J. said " 'No, just touch and tickle.' " Raydene recounted that she then asked M.J. if it hurt, to which M.J. responded " 'Yes,' " However, on cross-examination Raydene admitted that she testified otherwise at the June 21, 1989, hearing in which she stated M.J. indicated that she was not hurt by the "touch and tickle." Finally, Raydene added that all that M.J. indicated was "touch and tickle" for the first part of the day. But then the more we talked to her, the more she opened up. The record does not indicate the other individual who talked to M.J. that day.

Ann Kent, an assistant State's Attorney assigned to the felony review unit, testified that on February 24, 1988, she went to Mount Sinai Hospital in Chicago, where she interviewed Raydene for an hour. Kent interviewed M.J. initially with Raydene and Dr. Carleen Cox present and then privately. When she was alone with M.J., Kent asked M.J. if anybody ever hurt her and M.J. replied yes and pointed to her vaginal area. When questioned further, M.J. demonstrated on an anatomically correct female doll by thrusting her middle and index fingers into the vagina of the doll. However, on cross-examination, Kent, whose job it is to talk to persons who might have been abused, acknowledged that she had absolutely no specialized training on how to properly utilize these types of dolls when interviewing a victim so as not to be suggestive. In addition, Kent admitted that this was the first time she had ever used a doll in an interview and that she was not sure how focused M.J. was at the time.

Helen Schaeffer, a child protection investigator for the Illinois Department of Children and Family Services, testified that on October 29, 1987, she interviewed M.J. and that she used two anatomically correct dolls, one male and one female. Schaeffer asked M.J. if anybody ever touched her vaginal area and pointed to such area of the female doll. M.J. indicated that "Dziadzia" had and demonstrated by using both dolls. On cross-examination, Schaeffer stated that she could not remember exactly if M.J. was holding the female doll or if she was when she began questioning M.J. Schaeffer could not recall who pulled the doll's pants down. Schaeffer made written notes of her observations which were entered into the record.

Edlynne Sillman, a case worker for the Cook County Department of Supportive Services, testified that on July 21, 1987, she met with M.J. and Raydene in the morning and with Dariusz alone in the afternoon. While interviewing Dariusz, she was shown a family album which contained, in her opinion, an excessive number of nude photographs of M.J. On cross-examination, Sillman stated that she conducted these interviews in connection with Raydene and Dariusz' divorce action. Sillman also recounted that when she asked Dariusz about the nude photographs in the family album he told her that he had taken them after purchasing a new camera and saw nothing unusual about them. She subsequently met again with Raydene and subsequently submitted a report to the court.

Dr. Sharon Ahart, a pediatrician, testified for the State. Ahart examined M.J. on October 31, 1987, and noted trauma to the hymenal area, *viz.*, a healed laceration of the hymenal membrane. Ahart determined the likely cause of the trauma to be from sexual abuse caused by digital insertion. However, on cross-examination, Ahart admitted that she could not tell how old the hymenal trauma was or whether it was the result of one or more acts. Ahart also stated that such trauma could also be caused by things other than sexual abuse.

Ahart further testified that she asked M.J. if anyone had touched her vaginal area. M.J. responded that "Dziadzia" had done so with his hand. Ahart stated that these questions were initiated for medical corroboration and as part of a general policy to question children with genital trauma about how such trauma came about.

Defendant's wife Olga testified that there was tension in the household over her alleged failure to take a telephone call. Olga denied that she kicked Raydene out of the house after arguing. Olga further testified that she provided child care for M.J. and that M.J. never told her of any contact with her genital area by defendant.

Defendant testified at trial about his relationship with his wife Olga, Dariusz, Raydene and M.J. Defendant stated that when Raydene left his house and took M.J. with her, she did so of her own accord when she and Dariusz were getting divorced. Defendant stated that when he saw M.J. he would dance with her in his arms or hold her up to see a ceiling fan. On weekend visitation he stated that he had little time to spend with M.J. and that she spent most of her time with Olga. Defendant denied ever making any contact with M.J.'s genital area.

As noted above, M.J. did not testify on the first day of trial. During the course of the second day of the trial, the State called M.J. back to the stand two times. On the first occasion, M.J. simply would not answer any questions and the State terminated its questions and

made a motion to have her declared incompetent to testify. The trial court ruled M.J. competent.

At the second attempt at examining M.J., defense counsel objected due to her reluctance to testify the previous day and earlier that day. Defense counsel further argued that M.J.'s sudden willingness to testify was suspect and raised the question of whether she was coached by Raydene. With reluctance the trial court permitted the State to recall M.J. Whereupon she promptly testified that "JaJa" touched the area between her legs and pointed to the vaginal area of a female doll. On cross-examination, M.J. responded to defense counsel with only a few nods and subsequently refused to respond. M.J. never identified defendant as "JaJa."

Defendant was found guilty as charged and the instant appeal followed.

OPINION

Initially, we note that defendant's brief does not contain in its appendix a table of contents to the record on appeal. Supreme Court Rule 612 applies Supreme Court Rule 342 (134 Ill. 2d R. 342) to criminal appeals. (See 134 Ill. 2d R. 612(i).) Supreme Court Rule 342(a) provides, in pertinent part:

"(a) Appendix to the Brief. The appellant's brief shall include, as an appendix, a copy of the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered by the trial judge, any pleadings which are the basis of the appeal or pertinent to it, the notice of appeal, and a complete table of contents, with page references, of the record on appeal. The table shall state:

(1) the nature of each document, order, or exhibit, e.g., complaint, judgment, notice of appeal, will, trust deed, contract, and the like;

(2) in the case of pleadings, motions, notices of appeal, orders, and judgments, the date of filing or entry; and

(3) the names of all witnesses and the pages on which their direct, cross-examination, and redirect examinations begin." 134 Ill. 2d R. 342(a).

Compliance with Supreme Court Rule 342(a) is not an inconsequential matter. The rule's purpose is to require parties to proceedings before a court of review to present their arguments in a clear and orderly fashion so that the court may properly ascertain and dispose of the issues involved. This court has inherent authority to dismiss an appeal for noncompliance where an appellant's brief fails to comply with its rules. (*Collier v. Avis Rent A Car System, Inc.* (1993), 248 Ill. App. 3d 1088; *Zadrozny v. City Colleges* (1991), 220 Ill.

App. 3d 290.) However, as we shall demonstrate *infra*, this case clearly warrants reversal and, accordingly, we shall proceed with what we have before us.

That said, we now turn to the greater issue of whether the State failed to prove defendant guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, the relevant issue for a reviewing court is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. (*People v. Smith* (1993), 257 Ill. App. 3d 174, 178.) After a careful review of the record with this standard in mind, we conclude that defendant was not proven guilty beyond a reasonable doubt.

■ We initially note that the State presented absolutely no evidence as to where or when the alleged offense took place. Nor did the State present one single piece of evidence identifying defendant as the one who committed the offense. Instead, there was only what the trial court, in sustaining a defense objection on the point, ruled was hearsay, *i.e.,* that M.J. referred to defendant as "Dziadzia." Thus, there was no identification testimony admitted.

With regard to the so-called expert witnesses, only Dr. Ahart's testimony has much weight. The rest of the witnesses were either unqualified by their own admission to question M.J. and/or contradicted their own testimony. While Ahart did testify that she believed there was sexual abuse as evidenced by the hymenal trauma, she nevertheless admitted the possibility that the trauma was caused by something other than sexual abuse. As for the testimony of Carlene, it also suffers from contradiction and inconsistency.

■ Finally, we find clear error in the finding of four-year-old M.J. competent to testify as to acts which were alleged to have occurred when she was 2½ years old in light of her refusal twice to testify. Moreover, after reviewing the trial transcript, we agree with defendant that M.J.'s testimony is suspect. Here, we have the case of a four-year-old child who, after being previously unable to answer any questions, can suddenly and clearly state that defendant engaged in certain acts when she was age 2½, but can say no more than that. In closing, we would note that these proceedings were initiated by Raydene, a person who testified that she was kicked out of defendant's home in the middle of her divorce action with defendant's son.

Therefore, given the problems with the State's case against defendant, we find the State failed to prove the defendant guilty beyond a reasonable doubt and reverse and vacate the judgment of

conviction entered against defendant. In light of our disposition of this case, we need not address defendant's remaining issues.

Reversed and vacated.

RIZZI and CERDA, JJ., concur.