STEEL COMPANY *et al.*, Plaintiffs-Appellants, v. MORGAN MARSHALL INDUSTRIES, INC., Defendant-Appellee (Phillip Rosenband *et al.*, Defendants).

First District (3rd Division)    No. 1—92—3494

Opinion filed March 6, 1996.

---

242

Stuart Smith and Lance T. Jones, both of Chicago, for appellants.

Michael E. Pildes, of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

This consolidated action was brought in the circuit court of Cook County by plaintiffs-creditors, the Steel Company and Northern Industries, Inc. (hereinafter Northern), against defendants Morgan Marshall Industries, Inc. (hereinafter Morgan Marshall), Phillip Rosenband (hereinafter Phillip) and Par Steel Products and Services, Inc. (hereinafter Par Steel), to recover monies owed to them by Par Steel for goods sold and delivered to it in the years 1987 and 1988. Defendants moved for summary judgment based on the grounds that Morgan Marshall was not a successor corporation to Par Steel and was therefore not liable for Par Steel's debt. In addition, there was no transfer of assets between Morgan Marshall and Par Steel which violated the Uniform Fraudulent Transfer Act (Ill. Rev. Stat. 1991,

ch. 59, par. 101 *et seq.* (now 740 ILCS 160/1 *et seq.* (West 1994))). The circuit court granted defendants' motion. It is from this order that plaintiffs now appeal to this court pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Phillip and Par Steel are not parties to this appeal.

For the reasons which follow, we reverse and remand with directions.

## FACTUAL BACKGROUND

Par Steel was an Illinois corporation involved in fabricating steel products. It ceased operations on May 14, 1990, and was involuntarily dissolved by the Illinois Secretary of State on December 25, 1990. Morgan Marshall is an Illinois corporation in the business of fabricating steel products. It had originally been incorporated as East Coast Cellular Phone & Sales, Inc., on November 22, 1989. Phillip was the chief executive officer, president and sole shareholder of Par Steel and was also the chief executive officer, treasurer and director of Morgan Marshall.

Plaintiffs sold steel to Par Steel in 1987 and 1988. Northern had made an additional delivery in 1989. Par Steel did not pay the entire amount due. Morgan Marshall did not exist at the time when deliveries were made to Par Steel. The attorneys of Uni-Fin Corporation (hereinafter Uni-Fin), an asset-based lender with which Par Steel had entered into secure loan transactions with in 1986 and 1987, served Par Steel with a notice of default on April 17, 1990. On April 24, 1990, Phillip voluntarily sent a letter to Uni-Fin, advising it that Par Steel was in default and that Uni-Fin had a right to foreclose and sell the collateral. Uni-Fin had perfected its security interests in Par Steel's assets by filing Uniform Commercial Code (UCC) financing statements with the Secretary of State. On April 26, 1990, Par Steel was served with a notice of public sale pursuant to section 9—504 of the Uniform Commercial Code—Secured Transactions (hereinafter section 9—504) (Ill. Rev. Stat. 1991, ch. 26, par. 9—504 (now 810 ILCS 5/9—504 (West 1994))). The notice of public sale was published only in the Chicago Daily Law Bulletin. Michael Pildes, acting as Morgan Marshall's attorney, wrote to Uni-Fin's attorney, wherein he requested that the notice should only be published in the Chicago Daily Law Bulletin, otherwise, if published in the Chicago Tribune, "[it] could trigger events having a severely negative impact on Par Steel *and* Uni-Fin. Since both the *Chicago Tribune* and the *Chicago Daily Law Bulletin* are secular newspapers of general circulation, publication in either is commercially reasonable." (Emphasis in original.) As a result, the notice of public sale was only published in the Chicago Daily Law Bulletin, a legal periodical.

Prior to the date of the public sale, on May 10, 1990, Morgan Marshall wrote to Uni-Fin in regard to borrowing $3.2 million, to be secured by "accounts receivable" and "machinery." Incredibly, Morgan Marshall had not been in business as of May 10, 1990, and the proposed collateral would have been accounts receivable and machinery that belonged to Par Steel. The "equipment rider" enclosed with this letter to Uni-Fin refers to Par Steel's machinery. The loan was guaranteed by Phillip, who had also guaranteed Uni-Fin's loan to Par Steel. Uni-Fin agreed that it would sell the assets to Morgan Marshall if it was the successful bidder at the sale, as well as finance Morgan Marshall's purchase of the assets. In addition, Uni-Fin made a UCC filing claiming a blanket lien on the assets of Morgan Marshall, before the public sale took place.

The section 9—504 public sale took place on May 14, 1990. Uni-Fin successfully bid $3.25 million, which constituted all of Par Steel's assets. No other buyers were present. The actual fair market value of these assets was unknown. As a result of the loss of its assets, Par Steel ceased business operations.

Subsequent to the public sale, Uni-Fin sold the assets to Morgan Marshall for the sum of $3.2 million. Uni-Fin executed two bills of sale on May 14, 1990, and executed the loan and security agreements with Morgan Marshall on May 15, 1990. The loan was guaranteed by Phillip. Morgan Marshall borrowed the entire amount from Uni-Fin and used the assets of Par Steel as collateral. Phillip, on behalf of Morgan Marshall, authorized and directed Uni-Fin to pay the money from the initial loan proceeds to Uni-Fin rather than to Morgan Marshall and to apply those funds to the Par Steel debt. Uni-Fin then disbursed the funds to itself against Par Steel's indebtedness as authorized by Morgan Marshall. In effect, Morgan Marshall purchased the assets directly from Par Steel and was borrowing the money from Uni-Fin to do so.

Par Steel's sole shareholder was Phillip, who was not a shareholder of Morgan Marshall. On September 18, 1990, 1,000 shares of stock were issued by Morgan Marshall. Phillip's wife, Sandra Rosenband (hereinafter Sandra), became an 80% shareholder and Keith Morgan became a 20% shareholder. Phillip did not own any stock at Morgan Marshall, but Sandra did own stock, without having paid any consideration for her shares. Keith Morgan received a $50,000 note and guaranteed a $250,000 loan from a bank to Morgan Marshall.

Jose DeLaRosa, the bank auditor, stated in his audit that the assets of Par Steel were transferred to Morgan Marshall. The December 1990 audit of Morgan Marshall by DeLaRosa contains the statement

that the net loss figure for Morgan Marshall for the period May 14, 1990, through November 30, 1990, included Par Steel's expenses of $289,000 being shouldered by Morgan Marshall. DeLaRosa testified that he had audited Par Steel on two occasions and Morgan Marshall on three occasions. Audits took place at the same locations and he dealt with the same people.

Morgan Marshall filed a motion for summary judgment, which the circuit court granted. It is from this judgment that plaintiffs now appeal to this court.

## ISSUES PRESENTED FOR REVIEW

On appeal, plaintiffs argue that the trial court improperly granted defendants' motion for summary judgment. Specifically, plaintiffs contend that a genuine issue of material fact exists as to whether Morgan Marshall is a successor to Par Steel and that the granting of the summary judgment acted as a sanction against plaintiffs for not taking certain depositions that the court believed should have been taken.

## OPINION

As a preliminary matter, we note that plaintiffs' brief contains merely photocopies of two statutes as an appendix. Supreme Court Rule 342(a) provides, in pertinent part:

"(a) Appendix to the Brief. The appellant's brief shall include, as an appendix, a copy of the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered by the trial judge any pleadings which are the basis of the appeal or pertinent to it, the notice of appeal, and a complete table of contents, with page references, of the record on appeal." 134 Ill. 2d R. 342(a).

Thus, plaintiffs' brief is in clear violation of Rule 342(a), as none of the required documents are contained in the appendix. 134 Ill. 2d 342(a). "Failure to provide a court of review with a brief in compliance with the rules needlessly complicates and extends the appeal process by burdening the court with satellite issues not relevant to the substantive ones on appeal." *People v. Kraft*, 277 Ill. App. 3d 221, 224 (1995). With regard to violations of Rule 342(a), this court has held:

"Compliance with Rule 342(a) is not a matter of little or no import. The purpose of the rule is to require parties to proceedings before this court to present argument in a clear and orderly fashion so that the court may properly ascertain and dispose of the issues involved. A reviewing court has inherent authority to dismiss an appeal for noncompliance where an appellant's brief fails to

comply with its rules." *People v. Webb*, 267 Ill. App. 3d 954, 956, 641 N.E.2d 16 (1994). However, as the issues before us are straightforward and the brief is in all other respects adequate, we do not believe that so harsh a sanction as dismissal is warranted in this instance. Accordingly, we shall proceed with what we have been given.

"The purpose of the summary judgment procedure is to permit the court to determine if there is any genuine issue of fact, but not to allow the court to decide factual issues." *Kobus v. Formfit Co.*, 35 Ill. 2d 533, 538, 221 N.E.2d 633 (1966). The underlying policy is to facilitate litigation as the procedure's "benefits inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials." *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 586, 272 N.E.2d 497 (1971). However, the "summary judgment procedure *** is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.] In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). The appellate court, like the trial court, determines whether there is a genuine issue of material fact under a *de novo* standard of review. *Demos v. National Bank*, 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083 (1991).

Plaintiffs first argue that Morgan Marshall is liable for Par Steel's debt since Morgan Marshall was a mere continuation of Par Steel. Plaintiffs further argue that a *de facto* merger occurred. Plaintiffs assert that Morgan Marshall, Uni-Fin and Par Steel colluded to strip Par Steel of all its assets, place the assets in a new corporation, and leave the general creditors with nothing but an empty shell. By "scraping" off the creditors, both Uni-Fin and Morgan Marshall are better off financially. Defendants respond by asserting that in the present case, Par Steel did not sell its assets to Morgan Marshall. Rather, Uni-Fin, a secured creditor of Par Steel, properly foreclosed and bought Par Steel's assets at a public sale. It was Uni-Fin that sold Par Steel's assets to Morgan Marshall. Defendants assert that since Par Steel did not sell its assets to Morgan Marshall, Par Steel's liabilities did not become part of Morgan Marshall.

■ Generally, when one corporation sells its assets to another corporation, the seller's liabilities do not become a part of the successor corporation absent an agreement providing otherwise. See

*Sinquefield v. Sears Roebuck & Co.*, 209 Ill. App. 3d 595, 568 N.E.2d 325 (1991); *Hernandez v. Johnson Press Corp.*, 70 Ill. App. 3d 664, 388 N.E.2d 778 (1979). There exist four exceptions to this general rule: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Kaleta v. Whittaker Corp.*, 221 Ill. App. 3d 705, 583 N.E.2d 567 (1991); *Hernandez v. Johnson Press*, 70 Ill. App. 3d at 667. The second exception has been interpreted to include a *de facto* merger. See *Kaleta*, 221 Ill. App. 3d at 709.

■ In order to establish a *de facto* merger, the following factors need to be present: (1) there is a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, general business operations and assets; (2) there is a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer so that they become a constituent part of the buyer corporation; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *Nguyen v. Johnson Machine & Press Corp.*, 104 Ill. App. 3d 1141, 433 N.E.2d 1104 (1982); *Hernandez*, 70 Ill. App. 3d at 667.

■ In determining whether a *de facto* merger has occurred, the most important factor to consider is the identity of ownership of the new and former corporations. *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 621 N.E.2d 1032 (1993); see also *Hoppa v. Schermerhorn & Co.*, 259 Ill. App. 3d 61, 66, 630 N.E.2d 1042 (1994). The identity of the shareholders is also important under the "mere continuation" exception. "Illinois courts have indeed recognized that the *de facto* merger and mere continuation exceptions to successor corporation nonliability are 'inseparable' and that a continuity of stock ownership is critical to a finding of successor liability under either theory [citations]." *Nilsson*, 251 Ill. App. 3d at 418, quoting *Green v. Firestone Tire & Rubber Co.*, 122 Ill. App. 3d 204, 210, 460 N.E.2d 895 (1984).

■ In the case *sub judice*, plaintiffs assert that Morgan Marshall is a mere continuation of Par Steel and consequently is liable for Par Steel's unpaid invoices. Illinois law dictates that if the shareholders of the first corporation are completely different than the shareholders of the second corporation, then there is no continuity of shareholders, satisfying the requirements for the mere continuation exception

to the asset-purchased liability rule. In the instant case, we find that there existed a continuity of shareholders between Par Steel and Morgan Marshall, even though the shareholders were different in each corporation. The facts are unique. Par Steel's sole shareholder was Phillip. After Par Steel ceased all operations, Phillip became the chief executive officer of Morgan Marshall and was managing the company until the stocks were issued. Morgan Marshall issued stocks to two people, Keith Morgan and Phillip's spouse, who obtained her 80% interest in Morgan Marshall shares by way of a gratuitous transfer. While the mere fact that Phillip's spouse owned a stake in Morgan Marshall does not automatically give rise to the inference that a continuity of shareholders occurred, it is important to note that she received an 80% interest gratuitously in a company in which her spouse was the chief executive officer. We cannot allow the law to be circumvented by an individual exerting control through his spouse. A creditor's rights cannot be cut off by a corporation that merely puts on a new coat. Thus, we find as a matter of law a continuity of shareholders existed and, thus, we conclude that the mere continuation exception does apply in the instant case. See *People ex rel. Donahue v. Perkins & Will Architects, Inc.*, 90 Ill. App. 3d 349, 352-53, 413 N.E.2d 29 (1980). However, whether Morgan Marshall is the successor corporation of Par Steel is a genuine issue of material fact, to be determined by the trier of fact on remand.

A reasonable fact finder could not, as a matter of law, have found a continuity of shareholders, but the other three requirements of the *de facto* merger test present issues of fact. *People ex rel. Donahue*, 90 Ill. App. 3d at 352-53. After further review of the record, we find that the pleadings also raised a genuine issue of material fact that a *de facto* merger existed, still another exception to the successor liability theory. First, Morgan Marshall was incorporated on the same day that Par Steel ceased; the corporations conducted business from the same address using the same telephone number; the corporations had many of the same employees; the corporations engaged in the same kind of business; operated with the same equipment; had many of the same officers; had many of the same suppliers and the same customers that Par Steel had; and were served by the same lender. Second, we believe that Phillip was a constituent part of Morgan Marshall through his wife, Sandra. Third, Par Steel ceased operations and dissolved soon after the public sale took place. Finally, Morgan Marshall has assumed those liabilities and obligations necessary for the uninterrupted continuation of Par Steel's business. This is evidenced by Morgan Marshall's assumptions of the government agencies' contracts so as to continue the business operations of Par

Steel under the name of Morgan Marshall. Accordingly, we conclude that there exists a genuine issue of material fact as to whether a *de facto* merger occurred, and we remand this case to the trier of fact for further determinations.

■ Next, plaintiffs contend that Morgan Marshall is liable on Par Steel's debt since it meets yet another exception to the general rule that a corporation that purchases the assets of another corporation is not liable for the debts and liabilities of the transferor corporation in the absence of an agreement providing otherwise. This exception occurs when the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. Although it is undisputed that the public sale of Par Steel's collateral was valid and that section 9—504 requirements were met, there exists a genuine issue of material fact as to whether Par Steel's foreclosure proceedings and public sale were fraudulent and, thus, violated the Uniform Fraudulent Transfer Act (Ill. Rev. Stat. 1991, ch. 59, par. 101 *et seq.* (now 740 ILCS 160/1 *et seq.* (West 1994))).

Article 9 of the Uniform Commercial Code—Secured Transactions governs the foreclosure of security interests (Ill. Rev. Stat. 1991, ch. 26, par. 9—302 (now 810 ILCS 5/9—302 (West 1994))). In the case of defaults, the UCC provides that a secured party may sell the collateral securing the debt in order to satisfy the indebtedness (Ill. Rev. Stat. 1991, ch. 26, par. 9—504(1)(b) (now 810 ILCS 5/9—504(1)(b) (West 1994))). However, the UCC cautions that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable" (Ill. Rev. Stat. 1991, ch. 26, par. 9—504(3) (now 810 ILCS 5/9—504(3) (West 1994))). However, if advertising does not bring about competitive bidding, the secured party insures an opportunity for self-dealing, and the court must then scrutinize the sale closely. *Boender v. Chicago North Clubhouse Association, Inc.*, 240 Ill. App. 3d 622, 608 N.E.2d 207 (1992). "The ads should be reasonably directed to potential bidders in order to encourage interest. [Citations.] Where no one attends the public auction except the secured creditor, improper notice of the public auction may be inferred." *Boender*, 240 Ill. App. 3d at 630.

The Uniform Fraudulent Transfer Act (hereinafter the Act) provides:

> "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with *actual intent to hinder, delay, or defraud any creditor of the debtor.*" (Emphasis added.) 740 ILCS 160/5(a)(1) (West 1994).

In addition, a creditor is not only required to prove actual intent to delay, hinder or defraud, but can also prove actual intent based on the existence of certain factors, or "badges of fraud," enumerated in the Act (740 ILCS 160/5(b)(1) through (b)(11) (West 1994)). *Lindholm v. Holtz*, 221 Ill. App. 3d 330, 581 N.E.2d 860 (1991). These factors include:

"(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

Ill. Rev. Stat. 1991, ch. 59, par. 105(b)(1) through (b)(11) (now 740 ILCS 160/5(b)(1) through (b)(11) (West 1994)).

According to the plain language of the statute, the factors listed in section 5 of the Act to determine intent are merely considerations. *Lindholm*, 221 Ill. App. 3d at 334. However, when these "badges of fraud" are present in sufficient number, it may give rise to an inference or presumption of fraud. *Kaibab Industries, Inc. v. Family Ready Homes, Inc.*, 80 Ill. App. 3d 782, 786, 372 N.E.2d 139 (1978).

In the case at bar, plaintiffs here have shown indicia of fraud. Various acts giving rise to an inference of fraud occurred between Morgan Marshall and Uni-Fin *before* the public sale even took place. For example, Uni-Fin made a UCC filing claiming a blanket lien on the assets of Morgan Marshall. Uni-Fin had not been a creditor of Morgan Marshall; thus, no need for a blanket lien was required, unless, of course, Uni-Fin knew that Par Steel's assets would soon be sold to Morgan Marshall. In addition, *before* the public sale took place, Morgan Marshall sent a letter to Uni-Fin requesting a $3.2 million loan and enclosed an equipment rider wherein Morgan Marshall certified that it had good and indefeasible title to the equipment and machinery owned by Par Steel. Furthermore, an agreement was

executed between Uni-Fin and Morgan Marshall *before* the sale, whereby Uni-Fin would sell Par Steel's assets to Morgan Marshall and Uni-Fin would finance this purchase, if Uni-Fin was the successful bidder at the public sale. We believe plaintiffs have put forth sufficient evidence to create an inference of fraud. Whether the badges of fraud, which resulted in a violation of the Act, were found in the transactions between Par Steel, Morgan Marshall, and Uni-Fin are questions of fact for the trier of fact to decide. Accordingly, we reverse and remand to the circuit court for a determination of whether a violation of the Act occurred.

This court has considered the pleadings, depositions, admissions, the 18 exhibits, and affidavits on file in the case. Because of our conclusion that the trial court should not have granted defendant's summary judgment, we need not address the other issues plaintiffs raised on appeal. In light of the foregoing, we reverse the judgment of the circuit court of Cook County and remand for further proceedings not inconsistent with the views contained herein.

Reversed and remanded with directions.

GREIMAN and CERDA, JJ., concur.