165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
FRANK IX & SONS, INC., Plaintiff-Appellee,
v.
PHILLIPP TEXTILES, INC. and Thomas J. Phillipp, Defendants-Appellants.
 No. 97-3410.
 United States Court of Appeals, Seventh Circuit.
 Argued May 15, 1998.
Decided Sept. 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 3195. David H. Coar, Judge.
 Before Hon. RICHARD A. POSNER, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Frank Ix & Sons, Inc. ("FIS"), a commercial textile supplier, has an uncollected judgment for $158,788.62 against Thomas J. Phillipp Industries, Inc. ("Industries"), a now-defunct corporation not technically a party to this case. FIS sued Thomas J. Phillipp ("Phillipp"), Industries' principal, and Phillipp Textiles, Inc. ("Textiles"), a new corporation also owned solely by Phillipp, under a variety of theories to recover on that judgment. After a bench trial the district court held for FIS. It did so under three alternative theories: first, it pierced the corporate veil to reach Phillipp; second, it found that Textiles was liable as a successor corporation to Industries under Illinois law; and finally, it concluded that both Textiles and Phillipp were liable to FIS under the Illinois version of the Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 et seq. We affirm.
 
 
 2
 * We address two preliminary matters before turning to the facts in this case. First, the defendants have challenged the district court's decision to allow FIS to present a rebuttal witness, James Godbout, who was not included in the final pretrial order. As with all evidentiary matters, "the decision whether to allow an unlisted witness to testify rests in the district court's discretion." Fidelity and Deposit Co. of Maryland v. Krebs Eng'rs, 859 F.2d 501, 511 (7th Cir.1988) (citations omitted). "We will reverse the district court's decision to allow an unlisted witness to testify only if there is a clear abuse of discretion or manifest injustice." Id. The defendants offer no reason why the unexpected testimony of Godbout was prejudicial--meaning more prejudicial to their cause than it would have been had he been listed on the pretrial order--and besides, the district court specifically offered them the right to rebut that testimony. The district court was therefore well within its broad discretion in deciding to admit Godbout's testimony.
 
 
 3
 Second, the defendants challenge a variety of factual findings of the district court. These findings "shall not be set aside unless clearly erroneous," Fed.R.Civ.P. 52(a), however, and "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Id.; see also Soto v. Johansen, 137 F.3d 980, 981 (7th Cir.1998). It hardly bears repeating here that the clearly erroneous standard is a very high one to meet. See, e.g., Piraino v. International Orientation Resources, Inc., 137 F.3d 987, 990 (7th Cir.1998). Our presentation of the facts thus relies on the district court's findings, which we review only for clear error.
 
 II
 
 4
 Industries was an Illinois corporation founded by Phillipp in 1986 to engage in the commercial textiles trade. At all times, it was under his complete control. He was its sole director, officer, shareholder, and employee, and he operated the corporation out of his home in a Chicago suburb. Industries started its ill-fated business with FIS, a textiles supplier, in 1988. In 1992, FIS (a New Jersey corporation with its principal place of business in New York) filed a claim against Industries before the American Arbitration Association ("AAA") in New York, for money owed to it for goods. The AAA found for FIS in 1994, and a New York state court confirmed that award in 1995, entering judgment against Industries in the amount of $158,788.62. Industries was the sole defendant in the arbitral and New York state court proceedings. It never paid FIS the amount owed under the 1995 judgment, and was involuntarily dissolved by the State of Illinois in 1995 (apparently for failing to pay registration fees).
 
 
 5
 After the AAA decision but before FIS could reduce that decision to an enforceable court judgment, Phillipp formed a second Illinois corporation, Textiles. It, too, was under his total control; he was its sole director, officer, shareholder, and employee, and he also operated it out of his home. Like Industries, Textiles was in the commercial textiles business. In the year following the AAA award to FIS, Phillipp systematically looted Industries of its assets, transferring them either to Textiles or to himself. (Industries also paid off many of its creditors, with the notable exception of FIS.) The district court found that these maneuvers were intentional efforts "to avoid Industries' debt to [FIS]." While Phillipp testified that he created Textiles and devoted his attention to it "to explore new markets," the district court found Phillipp's testimony incredible and specifically faulted him for not offering any reasoned explanation why Industries could not have expanded or developed in whatever way Phillipp thought Textiles could have done. The court also heard testimony from several witnesses that Phillipp thought the AAA decision was wrong and would hurt Industries (both financially and through its reputational effects), and that he planned to dissolve Industries and allow Textiles to take over its work. In keeping with that plan, Industries sold its trademarks and stock of goods to Textiles at substantially less than their fair market value. For a period of time, the two corporations shared the same phone number and postage machine, both at Phillipp's house, and they used the same banking, accounting, and other services. Textiles also took over Industries' customers--over 78% of Industries' customers invoiced in 1994 had been invoiced by Textiles in the recent past, and all of Textiles' customers were formerly customers of Industries.
 
 
 6
 Finally, the district court found that Phillipp frequently failed to follow the formalities of corporate structure with respect to Industries. For example, his corporations routinely distributed money to him in addition to his salary, without the requisite board resolutions or waivers. He did not attempt to keep track of whether payments made to him were for his salary or were instead loans, dividends, or something else. Instead, he allowed his accountant post hoc to make those determinations on a quarterly basis. (In 1994 Phillipp reported a salary of $46,000 from Industries, but it paid out over $113,000 to him during the course of that year.) Industries (through Phillipp) wrote a monthly check for Phillipp's auto loan, and he routinely wrote himself checks on the corporation's account for his personal bills.
 
 III
 
 7
 The parties do not dispute that Illinois law applies to this case: all issues before us relate to Illinois corporate law, and specifically the methods by which Illinois permits someone to overcome the protections of the corporate form. See Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 923 (7th Cir.1996). As we noted before, after a bench trial the district court found for FIS on each of its proposed theories for recovery. Because we find the evidence so clearly supported the district court's decision to pierce the corporate veil to reach Phillipp and to hold Textiles liable for Industries' debt as a successor corporation, we do not reach its alternate holding that both are also liable under the UFTA (which would require tracing individual transfers from Industries to the defendants). Like the district court, though, we view the definitions of fraud in the UFTA to be relevant to the other theories of liability. Cf. NLRB v. International Measurement and Control Co., 978 F.2d 334, 338 (7th Cir.1992).
 
 
 8
 A. Piercing the corporate veil to reach Phillipp personally
 
 
 9
 Illinois courts are reluctant to pierce the corporate veil protecting corporate shareholders from personal liability. Brown Leasing, Inc. v. Stone, 284 Ill.App.3d 1035, 220 Ill.Dec. 518, 673 N.E.2d 430 (Ill.App.Ct.1996). They are willing to do so, however, when two requirements have been met:
 
 
 10
 (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences.
 
 
 11
 In re Wallen, 262 Ill.App.3d 61, 199 Ill.Dec. 359, 633 N.E.2d 1350, 1357 (Ill.App.Ct.1994); see also Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1388-89 (7th Cir.1994).
 
 
 12
 Under the first of these two requirements, Illinois courts look to a long list of factors relevant to whether to pierce the corporate veil, including:
 
 
 13
 inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a shareholder; failure to maintain arm's length relationships among related entities; and whether the corporation is a mere facade for the operation of the dominant shareholders.
 
 
 14
 Jacobson v. Buffalo Rock Shooters Supply, Inc., 278 Ill.App.3d 1084, 215 Ill.Dec. 931, 664 N.E.2d 328, 331 (Ill.App.Ct.1996) (citations omitted). For the second requirement, "[c]ourts that properly have pierced corporate veils to avoid 'promoting injustice' have found that, unless [they] did so, some 'wrong' beyond the creditor's inability to collect would result. Instead, some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." Hystro Products, 18 F.3d at 1390 (citations omitted).
 
 
 15
 The district court found that the two requirements to pierce Industries' corporate veil were met, and that many of the subordinate factors were also present. It focused on the disregard of financial formalities and adequate recording when Phillipp withdrew money on Industries' account; on the fact that Industries paid Phillipp's personal car payments, which Phillipp failed to declare as a benefit on his tax returns; on the fact that Industries violated Illinois corporate law by failing to record board resolutions or shareholder votes for a variety of actions including making distributions to its shareholders and selling its assets outside the course of ordinary business; and on the fact that Industries was technically insolvent when it made a variety of large transfers to Phillipp. The court also concluded that Phillipp intended to defraud FIS out of Industries' debt to it, and that Phillipp maneuvered the transfer of Industries' assets to Textiles specifically to avoid that debt. In so finding, the court relied partially on the eleven "badges of fraud" listed in Illinois' enactment of the UFTA, 740 ILCS 160/5(b); see also Steel Co. v. Morgan Marshall Indus., Inc., 278 Ill.App.3d 241, 214 Ill.Dec. 1029, 662 N.E.2d 595, 601-02 (Ill.App.Ct.1996). Illinois courts routinely hold that the presence of a sufficient number of these "badges" gives rise to a presumption of fraud (defined as an "actual intent to hinder, delay, or defraud any creditor of the debtor" by the UFTA, 740 ILCS 160/5(a)(1)), Steel Co., 214 Ill.Dec. 1029, 662 N.E.2d at 602. The district court found that at least nine of the eleven were present here. (The defendants castigate the district court for not identifying specifically which "badges" he found. A review of the record indicates that they seem to qualify for each badge except for having absconded (740 ILCS 160/5(b)(6), and having transferred the essential assets of Industries to a lienor who then transferred them to an insider (740 ILCS 1605(b)(11).)
 
 
 16
 In the end, the decision that sufficient conditions exist to warrant piercing the corporate veil is a factual one, which we will only reverse for clear error. Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 567, 571 (7th Cir.1985); see also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 85 F.3d 1282 (7th Cir.1996). As the district court found, it seems obvious that the two Wallen criteria exist here--Industries was Phillipp's personal bank, and when an outsider threatened to bankrupt that bank Phillipp transferred its assets to another, sneaking out the back door. Furthermore, even if the district court had not found actual fraud here (which it did find), we explained in Hystro Products that the second Wallen criterion does not require actual fraud; unfair enrichment of one party is enough, as is "a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation." Hystro Products, 18 F.3d at 1390 (citations omitted).
 
 
 17
 In response to the district court's findings, the defendants argue that Industries followed some corporate formalities, and that the fact that Industries had just one shareholder does not alone allow a court to pierce its corporate form. These arguments, while indisputable, are irrelevant to the district court's conclusion that Industries failed to follow other corporate formalities and that not piercing the corporate veil would tolerate a fraud on these facts. The defendants also argue that Phillipp did not have the requisite fraudulent intent to warrant piercing Industries' corporate veil, but intent too is a question of fact. United States v. Rickets, 146 F.3d 492, 1998 WL 305188, at * 5 (7th Cir. June 11, 1998); Dubisky v. United States, 62 F.3d 182, 185 (7th Cir.1995); Edward M. Cohon & Assoc. v. First Nat. Bank, 249 Ill.App.3d 929, 188 Ill.Dec. 106, 618 N.E.2d 676, 682 (Ill.App.Ct.1993). The defendants have pointed us to no evidence which undermines the district court's finding, and as we explained above actual fraud is in any event unnecessary. Hystro Products, 18 F.3d at 1390. While the defendants argue that the judgment against Industries tainted it in the marketplace, which in turn required them to adopt a new name, a new direction, and a new business plan, these reasons justify starting a new corporation, not raiding the former corporation's assets to the detriment of one particular creditor. We therefore agree with the district court that Phillipp should be held personally liable to FIS for Industries' debt.
 
 
 18
 B. Successor liability to find Textiles liable for Industries' debt
 
 
 19
 It is well-settled that normally a company which purchases the assets of another is not liable for the former company's debts. Vernon v. Schuster, 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172 (Ill.1997). This doctrine parallels the veil protecting a corporation's shareholders, discussed above. As with that doctrine, however, there are exceptions to the general rule of successor corporate nonliability. Illinois recognizes four basic exceptions:
 
 
 20
 (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.
 
 
 21
 Id. at 1175-76. The district court found that Textiles was liable for Industries' debt to FIS under both the "mere continuation" and the "fraudulent purpose" grounds to impose liability.
 
 
 22
 As with Phillipp himself, imposing liability on Textiles based on the defendants' fraudulent intent to escape liability to FIS involves our reviewing the district court's findings of fact, which we can only reverse for clear error. The defendants' arguments here duplicate those raised above--that the transfer of assets to Textiles from Industries was not fraudulent--with the addition of the argument that the transfer of these assets was not for less than their value. We cannot say that the district court clearly erred in finding that the transfers of assets were for less than their fair value. (For example, there was evidence that Industries sold Textiles' trademarks for a dollar, and that it sold its inventory for significantly less than the recorded book value .) We thus agree with the district court that Textiles should be liable for Industries' debt under the "fraudulent purpose" theory.
 
 
 23
 Textiles is also liable to FIS as the "mere continuation" of Industries. See Vernon, 228 Ill.Dec. 195, 688 N.E.2d at 1176. This exception imposes liability when "the purchasing corporation maintains the same or similar management and ownership, but merely wears different clothes," and is aimed at blocking situations where "the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors." Id. The district court found that Textiles was the mere continuation of Industries because stock ownership of the two corporations was identical; Textiles took over most or all of Industries' business; the two corporations had the same address, officers, directors, employees, postage machine, phone number, bank, accountant, and trademarks; and the only reason Phillipp could articulate for why he created a new corporation was his desire to go in a "new direction." The defendants fail to respond in any coherent fashion to this holding. These factors, plus the strong scent of fraud present here (and alluded to by the Vernon court, see id.) leave us firmly convinced in the accuracy of the district court's finding. See also Park, 223 Ill.Dec. 163, 679 N.E.2d at 109. We certainly do not see any evidence that it clearly erred in so finding.
 
 
 24
 We therefore AFFIRM the judgment of the district court.