B.R. LINDHOLM, a/k/a B. Richard Lindholm, Plaintiff-Appellee, v. PATRICIA A. HOLTZ, d/b/a Soup to Nuts, Natural Foods, Defendant-Appellant (Good Food Enterprises, Inc., Defendant).

Second District   No. 2—91—0723

Opinion filed November 6, 1991.

Jerome S. Feder, of Chicago, for appellant.

M. Katherine Moran, of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora, for appellee.

Kenneth L. Kaergard, of Shearer, Blood, Agrella & Boose, of St. Charles, for Good Food Enterprises, Inc.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Patricia Holtz, d/b/a Soup to Nuts, Natural Foods (Natural Foods), appeals from an order of the circuit court which imposed a preliminary injunction against her under the Uniform Fraudulent Transfer Act (Fraudulent Transfer Act) (Ill. Rev. Stat. 1989, ch. 59, par. 101 *et seq.*). The appeal is pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). Defendant raises three issues on appeal: (1) whether the transfer of assets from Natural Foods to Soup to Nuts, Inc. (Nuts, Inc.), was fraudulent in light of the claim of plaintiff, B.R. Lindholm; (2) whether plaintiff's failure to seek avoidance of the transfer of assets from Natural Foods to Nuts, Inc., prevents a claim to set aside a subsequent transfer from Nuts, Inc., to a third

party as fraudulent; and (3) whether plaintiff has standing to seek injunctive relief under the Fraudulent Transfer Act. We reverse and remand.

On May 26, 1988, plaintiff agreed to rent to defendant a commercial space for defendant's business in Geneva, Illinois. Defendant occupied the premises on December 1, 1988. The term of the lease was to begin on that date and end on November 30, 1993, with rent installments due each month. On May 30, 1990, defendant vacated the premises and moved to a new location in Geneva.

On August 24, 1990, plaintiff filed a complaint seeking $113,772 in unpaid rent. In her answer, defendant admitted that she signed the lease and occupied the premises and that she vacated the premises prior to the expiration of the lease. Defendant asserted the affirmative defense of constructive eviction. Plaintiff denied that he violated any provisions of the lease or that he did not maintain the premises.

On April 30, 1991, plaintiff moved to amend the complaint to add Good Food Enterprises, Inc. (Good Food, Inc.), as a necessary defendant. In the amended complaint, plaintiff alleged that on October 22, 1990, defendant incorporated her business as Nuts, Inc., which is the successor to defendant. Plaintiff further alleged that on March 5, 1991, notice of the intended transfer was sent to debtors of Nuts, Inc., which stated that Nuts, Inc., intended to transfer to Good Food, Inc., all of its assets. Plaintiff claimed that the transfer of assets from Nuts, Inc., to Good Food, Inc., violated the Fraudulent Transfer Act. Plaintiff requested the court to void the transfer of assets from Nuts, Inc., to Good Food, Inc., and attach the assets that were transferred.

Plaintiff also moved for a preliminary injunction to prohibit defendant from further disposing of any funds she or Nuts, Inc., received in the transfer of assets to Good Food, Inc., and to place any amounts due and owing to defendant from Good Food, Inc., into an escrow account pending the resolution of this cause. Defendant opposed the preliminary injunction on the ground that the transfer of assets from Nuts, Inc., was not done with the intent to defraud plaintiff and that plaintiff was not a creditor of Nuts, Inc.

The court granted the preliminary injunction and ordered that further payments due from Good Food, Inc., to defendant be escrowed and that Good Food, Inc., was enjoined from further transferring assets other than in the ordinary course of business. Defendant's timely appeal followed.

■■ ■ Defendant's first two contentions can be consolidated to address the true issue on appeal: whether the transfer of assets from Nuts, Inc., to Good Food, Inc., was fraudulent. If the transfer was

not fraudulent, the preliminary injunction imposed by the trial court was improper. The trial court granted relief pursuant to section 5(a)(1) of the Fraudulent Transfer Act, which provides that a transfer is fraudulent if the debtor made the transfer "with actual intent to hinder, delay, or defraud [the] creditor." (Ill. Rev. Stat. 1989, ch. 59, par. 105(a)(1).) Intent may be determined by considering, among other factors, the fact that, before the transfer was made, the debtor had been sued. (Ill. Rev. Stat. 1989, ch. 59, par. 105(b)(4).) Section 108(a) of the Fraudulent Transfer Act provides, in relevant part, certain remedies for creditors:

"(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." (Ill. Rev. Stat. 1989, ch. 59, par. 108(a).)

Plaintiff sought, among other remedies, a preliminary injunction pursuant to subsection (3)(A). Thus, we turn to a review of the applicable principles of equity.

A preliminary injunction is an extraordinary remedy which should be granted with the utmost care. (*Central Imports, Inc. v. Dortmunder Actien-Brauerei AG* (1991), 214 Ill. App. 3d 461, 465.) The remedy is designed to preserve the status quo until the cause can be decided on the merits. (*Buzz Barton & Associates v. Giannone* (1985), 108 Ill. 2d 373, 386, citing *Nester Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 574.) A trial court's decision to issue a preliminary injunction will not be disturbed on appeal absent an abuse of discretion. (*Cannon v. Whitman Corp.* (1991), 212 Ill. App. 3d 79, 81.) That determination is based on an evaluation of whether the trial court's decision was against the clear weight of the evidence. *Hough v. Weber* (1990), 202 Ill. App. 3d 674, 688.

To be entitled to a preliminary injunction, plaintiff needed to establish: (1) a certain right in need of protection; (2) the injunction is necessary to prevent an irreparable injury; (3) there is no adequate remedy at law; (4) plaintiff has a substantial likelihood of success on the merits; and (5) without the preliminary injunction, plaintiff will

suffer greater harm than defendant would if the injunction were to issue. *Hough*, 202 Ill. App. 3d at 684.

Plaintiff alleged that the transfer of assets was fraudulent in fact. In such circumstances, the creditor must prove a specific intent to delay, hinder or defraud. (*Gendron v. Chicago & North Western Transportation Co.* (1990), 139 Ill. 2d 422, 437.) Although plaintiff argues that he proved one of the "badges of fraud," that the transfer was made after suit had been filed against defendant (Ill. Rev. Stat. 1989, ch. 59, par. 105(b)(4)), we do not agree that this fact is sufficient here to show actual fraud.

A basic principle of statutory construction is to give effect to the intent of the legislature. (*Ruva v. Mente* (1991), 143 Ill. 2d 257, 263.) That intent may be derived from considering the language of the entire enactment and its purpose. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 96.) In the absence of ambiguity, the language of a statute must be given its plain and ordinary meaning. *DeClerck v. Simpson* (1991), 143 Ill. 2d 489, 492.

■ According to the plain language of the statute, the factors listed in section 5 of the Fraudulent Transfer Act to determine intent are merely considerations (Ill. Rev. Stat. 1989, ch. 59, par. 105(b)), and the factor here is only 1 of 11 nonexclusive factors listed in the statute. We interpret the statutory language as not creating a presumption of intent to defraud, particularly when the creditor has only proven one of the statutory factors. See Alces & Dorr, *A Critical Analysis of the New Uniform Fraudulent Transfer Act*, 3 U. Ill. L. Rev. 527, 538 (1985).

Our research has uncovered no Illinois cases concerning this aspect of the Fraudulent Transfer Act. Because the Fraudulent Transfer Act provides that it shall be construed in uniformity with the law of States which have adopted it (Ill. Rev. Stat. 1989, ch. 59, par. 112), we may turn to other jurisdictions for guidance in this area.

Our interpretation of section 5 of the Fraudulent Transfer Act is bolstered by the interpretation of that provision of the Fraudulent Transfer Act adopted by West Virginia. In *Rich v. Rich* (W. Va. 1991), 405 S.E.2d 858, a case neither party cited, the supreme court of West Virginia considered the statutory factors to determine whether a transfer was fraudulent. The court found that the presence of seven of the factors "strongly suggest[ed]" actual intent to defraud, but that such a determination "must be made by the trial court upon a taking of evidence." (*Rich*, 405 S.E.2d at 862, 864.) We interpret *Rich* to mean that proof of some, or even all, of the factors listed in the Fraudulent Transfer Act does not create a presumption of actual in-

tent to defraud. Rather, those factors are indicators of such intent on which the trial court may rely to make its findings based on evidence presented by the parties.

■■ Plaintiff introduced no evidence to support the conclusion that the transfer was done with the actual intent to defraud. There is no evidence that defendant became insolvent due to the transfer, or that she received inadequate compensation from the proceeds. The mere fact that she sold the business assets in exchange for cash does not mandate the conclusion that she did so fraudulently or that plaintiff will be hindered in his attempt to collect on any judgment he might receive. However, plaintiff refers to the colloquy between plaintiff's attorney and the trial court at the hearing:

"MS. MORAN [plaintiff's counsel]: What about the relief requested with regard to Mrs. Holtz disposing of any of the proceeds that she received or that Soup to Nuts received.

THE COURT: That's gone, so I'm not going to attach that."

According to plaintiff, this colloquy shows that the court found that defendant disposed of the proceeds that she had already received from the sale of the assets. We disagree. There is no evidence in the record to show what became of the proceeds of the sale or whether defendant still retained them, notwithstanding the comment of the trial court. Without such evidence, the court's decision cannot be supported. Therefore, the order granting the preliminary injunction was an abuse of discretion.

Because of our conclusion that the court should not have granted the preliminary injunction, we need not address the other issues defendant raises on appeal.

The order of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GEIGER and BOWMAN, JJ., concur.