**In re Lavon D. and Jennie H. ZEIGLER, Debtors.**

**David E. Grochocinski, Trustee, Plaintiff,**

**v.**

**Lavon D. Zeigler, Jennie H. Zeigler, Colleen Lagro, William Lagro, and Washington Mutual Bank, F.A., Defendants.**

**Bankruptcy No. 03 B 50095.**
**Adversary No. 04 A 00428.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 10, 2005.

Arthur W. Rummler, Esq., Lincolnwood, IL, for Plaintiff.

Terence M. Fenelon, Esq., Naperville, IL, for Defendants.

David E. Grochocinski, Grochocinski, Grochocinski & Lloyd, Orland Park, IL, for trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the complaint filed by David E. Grochocinski, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Lavon D. and Jennie H. Zeigler (the "Zeiglers") against the Zeiglers, Colleen and William Lagro (the "Lagros"), and Washington Mutual Bank, F.A. (the "Bank"), on the motion for directed findings made at trial by the Zeiglers and the Lagros pursuant to Federal Rule of Bankruptcy Procedure 7052, and on the Trustee's motion to compel discovery and his request for sanctions. For the reasons set forth herein, the Court denies the motion for directed findings. The Court grants judgment in part under Count I of the complaint in favor of the Trustee and holds that the transfers of the real property from the Zeiglers to the Lagros were constructively fraudulent pursuant to 740 ILCS 160/5(a)(2) and 740 ILCS 160/6(a). Under 11 U.S.C. § 544(b)(1), the Trustee may avoid the transfers of the real property made by the Zeiglers to the Lagros. Pursuant to 11 U.S.C. § 550(a)(1), the Court authorizes the Trustee to recover the real property for the benefit of the Zeiglers' estate or the value of such property in the sum of $185,000.00, less the cost of improvements made by the Lagros on and after October 24, 2000 pursuant to 11 U.S.C. § 550(e)(1). Further, pursuant to Count II of the complaint, the Court grants judgment in part in favor of the Trustee and authorizes him to sell the real property pursuant to 11 U.S.C. § 363(b)(1) and § 363(h). Finally, as a sanction for the Zeiglers' failure to comply with certain discovery requests made by the Trustee, the Court orders the Zeiglers to pay the reasonable attorney's fees incurred by the Trustee in the sum of $1,147.50.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (N) and (O).

## II. FACTS AND BACKGROUND

Many of the facts contained herein have been stipulated to by the parties. The Zeiglers are an elderly couple with various health-related problems and attendant medical bills. Lavon Zeigler has had several cardiac surgeries, including a heart transplant, and Jennie Zeigler also suffers from cardiac-related health issues. The Zeiglers and the Lagros, including their two children, reside at 2N150 Pearl Avenue, Glen Ellyn, Illinois (the "Property"). Defendant Colleen Lagro is the daughter of the Zeiglers, and William Lagro is Colleen's spouse. On January 3, 1999, the Zeiglers executed a quit claim deed conveying the Property to themselves and their daughter, Colleen Lagro, each retaining a one-third interest in the Property. Trustee Ex. No. 3; Def. Ex. No. 10. The deed evidencing such transfer, however, was not recorded until May 1, 2000. Immediately prior to May 1, 2000, the Zeiglers were the only persons on the title to the Property. Further, on May 1, 2000, the Zeiglers shared occupancy of the Property with the Lagros and their children. Shortly thereafter, on October 20, 2000, the Zeiglers and Colleen Lagro executed a quit claim deed conveying the Property to Colleen and William Lagro. That deed

was recorded on October 24, 2000. Trustee Ex. No. 4; Def. Ex. No. 11. Both transfers were voluntary.

At the time of the final October 2000 transfer, the Zeiglers owned no other real property. On October 24, 2000, the Lagros executed a note and mortgage against the Property and thereby paid an $80,578.43 mortgage debt owed by the Zeiglers on the Property. Trustee Ex. No. 7. In October 2000, the Property had a fair market value of $185,000.00. Trustee Ex. No. 6. At all relevant times, the Zeiglers and the Lagros lived on the Property and continue to live there. The Property, which is used as a residence for the two families, does not produce, transmit or distribute for sale electric energy or natural synthetic gas for heat, light or power. At the meeting of creditors pursuant to 11 U.S.C. § 341, the Zeiglers disclosed the transfers of the Property to the Trustee. Additionally, both transfers were recorded in DuPage County, Illinois.

The Zeiglers filed a Chapter 7 bankruptcy petition on December 12, 2003. Trustee Ex. No. 1. The Zeiglers' petition listed assets totaling $9,650.00, including $650.00 in personal property and $9,000.00 for a 1999 Chevrolet van subject to a lien in favor of General Motors Acceptance Corporation ("GMAC"). *Id.* The balance of the loan with GMAC was not listed on the Zeiglers' Schedule D. *Id.* The Zeiglers executed a reaffirmation agreement with GMAC listing the amount owed of $7,966.08 as of December 12, 2003. Trustee Ex. No. 2. The Zeiglers did not list any real property on their Schedule A. *Id.* Further, the Zeiglers listed unsecured debt in the total sum of $53,050.00 on their

Schedule F. *Id.* The Zeiglers are both retired and earn a total combined monthly income of $2,528.00. *Id.* at Schedule I.

On March 1, 2004, the Trustee filed this adversary proceeding to avoid the transfers of the Property as fraudulent transfers pursuant to 11 U.S.C. § 544 and 740 ILCS 160/5 and 160/6 and to sell the Property pursuant to 11 U.S.C. § 363(b)(1), (f) and (h). On May 7, 2004, the Zeiglers and the Lagros collectively answered the complaint, denying that the transfers of the Property were fraudulent. On July 21, 2004, they filed an amended answer. The Bank never filed an answer to the complaint, and the Trustee never sought to obtain a default judgment against the Bank. The Court held an evidentiary hearing at which the Zeiglers and the Lagros made a motion for directed findings under Federal Rule of Bankruptcy Procedure 7052, which incorporates by reference Federal Rule of Civil Procedure 52(c). The Court reserved ruling on the motion until the close of all of the evidence.

## III. DISCUSSION

### A. Count I of the Complaint–Avoidance of the Transfers

In Count I of the complaint, the Trustee contends that the transfers by the Zeiglers to the Lagros were made with actual intent to hinder, delay or defraud the Zeiglers' creditors and constitute fraudulent transfers pursuant to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a)(1).[1] The Trustee also alleges that the transfers were constructively fraudulent under 740 ILCS 160/5(a)(2) because the Zeiglers received less than reasonably equivalent value in exchange for the trans-

---

1. As set forth above, there were two transfers of real property in this matter. In May 2000, the Zeiglers conveyed the Property to themselves and their daughter, Colleen Lagro. Almost six months later, the Zeiglers and Col-

leen Lagro conveyed the Property to Colleen and William Lagro. Although only the second transfer is applicable to the instant discussion, the Trustee refers to "transfers" in the plural. Thus, the Court will do so as well.

fers and because they intended to incur or believed that they would incur debts that would be beyond their ability to pay as such debts matured. Further, the Trustee seeks to avoid the transfers to the Lagros pursuant to 740 ILCS 160/6(a). The Trustee contends that the Zeiglers received less than reasonably equivalent value in exchange for the transfers and were insolvent at the time of the transfers or became insolvent as a result of the transfers.

The Trustee seeks to avoid the transfers of the Property from the Zeiglers to the Lagros pursuant to 11 U.S.C. § 544(b)(1), which provides in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (emphasis supplied). This section expressly authorizes a trustee to avoid a transfer voidable under applicable state law. Furthermore, if a transfer is avoided under § 544(b)(1), it can be recovered under 11 U.S.C. § 550 from, among others, "the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]" 11 U.S.C. § 550(a)(1).

In a case under § 544(b)(1), the trustee has the rights of an unsecured creditor to avoid transactions that can be avoided by such creditor under state law. *In re Image Worldwide, Ltd.,* 139 F.3d 574, 576–77 (7th Cir.1998). The trustee need not identify the creditor, so long as an unsecured creditor exists. *Id.* at 577; *In re Leonard,* 125 F.3d 543, 544 (7th Cir.1997). The transaction can be avoided completely even if the trustee cannot produce creditors whose liens total more than the value of the property. *Leonard,* 125

F.3d at 544–45. In the matter at bar, the Trustee has demonstrated that the Zeiglers have numerous unsecured creditors. Specifically, the Trustee introduced several credit card statements that show debts owed by the Zeiglers to these creditors as of the petition date. Trustee Ex. Nos. 15–22. Accordingly, the Trustee may proceed against the defendants under state law.

The applicable state law asserted by the Trustee under § 544(b)(1) is the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* (the "UFTA"). The relevant portions of the UFTA provide:

> § 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
>
> § 6. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation

and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS 160/5(a) and 160/6(a).

■■■ Sections 5 and 6 of the UFTA are analogous to 11 U.S.C. § 548(a)(1) and (2).[2] *See Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir.), *cert. denied sub nom. African Enter., Inc. v. Scholes*, 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995); *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 443 (Bankr.N.D.Ill.1995). "Because the provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA." *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 164 (N.D.Ill.1998); *see also Image Worldwide*, 139 F.3d at 577 (finding that because the Illinois UFTA is a uniform act which derived phrases from § 548, the court may look to cases decided under § 548 as well as cases interpreting other states' versions of the UFTA for assistance).

■■ Pursuant to § 5 of the UFTA, the Trustee may recover the transfers made by the Zeiglers under two circumstances: (1) if the Zeiglers made the transfers with actual intent to defraud a creditor; or (2) if the Zeiglers did not receive reasonably equivalent value in exchange for the transfers and were insolvent at the time of the transfers or became insolvent as a result of the transfers. The UFTA speaks to two types of fraud—"fraud in fact" and "fraud in law." *Scholes*, 56 F.3d at 756–57.

■■■ "Fraud in fact" or actual fraud pursuant to § 5(a)(1) of the UFTA occurs when a debtor transfers property with the intent to hinder, delay or defraud his cred-

itors. *Bay State Milling Co. v. Martin (In re Martin)*, 145 B.R. 933, 946 (Bankr. N.D.Ill.1992), *appeal dismissed*, 151 B.R. 154 (N.D.Ill.1993). The moving party must prove that there was a specific intent to hinder, delay or defraud. *Lindholm v. Holtz*, 221 Ill.App.3d 330, 334, 163 Ill.Dec. 706, 581 N.E.2d 860, 863 (2d Dist.1991) (*citing Gendron v. Chi. & N.W. Transp. Co.*, 139 Ill.2d 422, 437, 151 Ill.Dec. 545, 564 N.E.2d 1207, 1214–15 (1990)).

■■ This Court has held that the movant has the burden of proving all elements of actual fraud under Illinois law by clear and convincing evidence. *Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 287 (Bankr.N.D.Ill.2003) (*citing Martin*, 145 B.R. at 946; *Ray v. Winter*, 67 Ill.2d 296, 304, 10 Ill.Dec. 225, 367 N.E.2d 678, 682 (1977)); *McHugh v. Anderson (In re McHugh)*, Nos. 02 B 10425, 02 A 00254, 2003 WL 21018601 at *6 (Bankr.N.D.Ill. May 1, 2003); *Helms v. Roti (In re Roti)*, 271 B.R. 281, 301 (Bankr.N.D.Ill.2002), *aff'd*, No. 02 C 0925, 2003 WL 1089363 (N.D.Ill. Mar.11, 2003). In *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570 (Bankr.N.D.Ill.2005), however, Chief Judge Wedoff noted in a footnote that the Illinois courts have not addressed the appropriate burden of proof applicable to an actual fraud claim under the UFTA. *Id.* at 587 n. 11. Although he expressly declined to decide whether the higher standard of proof would apply to an actual fraud claim under the Illinois UFTA, he held that a movant need demonstrate its claim under § 548(a)(1) (the equivalent of § 160/5(a)(1) under the UFTA) by a preponderance of the evidence standard. *Id.* With all due respect to Judge Wedoff, until the Illinois courts hold otherwise, this Court will con-

---

**2.** An important difference between § 548 and the UFTA is that § 548 authorizes avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA, however, within four years after the transfer was made. 740 ILCS 160/10(a).

tinue to apply the clear and convincing standard of proof to actual fraud claims under § 160/5(a)(1) of the UFTA.

■ In determining whether a transfer is made with actual intent to defraud, the UFTA sets forth several factors—also known as the "badges of fraud"—from which an inference of fraudulent intent may be drawn. Section 5(b) of the UFTA sets forth the following indicia:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b).

■ When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of fraud. *Steel Co. v. Morgan Marshall Indus., Inc.*, 278 Ill.App.3d 241, 251, 214 Ill.Dec. 1029, 662 N.E.2d 595, 602 (1st Dist.1996). Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed.R.Evid. 301. The presence of seven badges of fraud have been held sufficient to raise a presumption of fraudulent intent. *See Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 170 (Bankr.N.D.Ill.1997).

■ While a transfer between family members is not proof per se of fraudulent intent, a familial relationship is weighty proof of such intent. *Id.* at 168 (*citing Reisch v. Bowie*, 367 Ill. 126, 132, 10 N.E.2d 663, 666 (1937) ("In particular, if a voluntary conveyance from a parent to a child results in hindering or delaying creditors, it will be regarded as fraudulent in law, irrespective of the honesty of the grantor's motives.")). Under the UFTA, an "insider" of an individual debtor includes relatives of the debtor. 740 ILCS 160/2(g)(1)(A). A relative has been defined in part as "an individual related by consanguinity within the third degree as determined by the common law...." 740 ILCS 160/2(k).

■ Full consideration for the transfer is not, as a matter of law, an absolute defense to fraud in fact. *Spatz*, 222 B.R. at 169. If the moving party proves fraudulent intent, then the transfer is deemed fraudulent, even if it is in exchange for valuable or full consideration. *Id.* The UFTA expressly provides a defense to fraud in fact under § 9(a), which provides:

**374**

A transfer or obligation is not voidable under paragraph (1) of subsection (a) of Section 5 against a person who took in *good faith and for a reasonably equivalent value* or against any subsequent transferee or obligee.

740 ILCS 160/9(a) (emphasis supplied). Courts have recognized that a defense under § 9 of the UFTA consists of two elements: good faith and reasonably equivalent value. *Spatz*, 222 B.R. at 168; *Kennedy v. Four Boys Labor Serv., Inc.*, 279 Ill.App.3d 361, 370, 216 Ill.Dec. 160, 664 N.E.2d 1088, 1093 (2d Dist.1996).

▮▮ Under § 5(a)(2) of the UFTA, "fraud in law," on the other hand, does not require any showing of fraudulent intent. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Scholes*, 56 F.3d at 757. Rather, fraud is presumed if a debtor transfers property for less than adequate value and is thereby unable to meet his obligations. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 73 (Bankr.N.D.Ill. 2002). Because of its nature, the conveyance is deemed constructively fraudulent. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 257 B.R. 253, 268 (Bankr.N.D.Ill. 2001). The movant has the burden of proving fraud in law by a preponderance of the evidence. *Joy Recovery*, 286 B.R. at 73; *Martin*, 145 B.R. at 946. A different standard of proof applies to this theory because intent to defraud is presumed when the elements of constructive fraud are established. *Martin*, 145 B.R. at 946. The distinction between "fraud in fact" and "fraud in law" is derived from whether or not there is any consideration for the conveyance at issue. *Second Nat'l Bank of Robinson v. Jones*, 309 Ill.App. 358, 365, 33 N.E.2d 732, 736 (4th Dist.1941).

▮▮ In order for the Trustee to establish that a conveyance is fraudulent in law, four elements must be present: (1) the Zeiglers made voluntary transfers; (2) at the time of the transfers, the Zeiglers had incurred obligations elsewhere; (3) the Zeiglers made the transfers without receiving a reasonably equivalent value in exchange for the transfers; and (4) after the transfers, the Zeiglers failed to retain sufficient property to pay their indebtedness. *See Lease Resolution*, 128 F.3d at 1079.

What constitutes "reasonably equivalent value" for purposes of the UFTA has not been defined by Illinois case law.[3] The Illinois Supreme Court, in discussing a prior statute, stated that one of the necessary elements to establish a fraudulent conveyance is that "there must be a transfer made for no or inadequate consideration[.]" *Gendron*, 139 Ill.2d at 438, 564 N.E.2d at 1215. One Illinois Appellate Court has since stated that there is no reasonably equivalent value when there is "no or inadequate consideration[.]" *Regan v. Ivanelli*, 246 Ill.App.3d 798, 804, 187 Ill.Dec. 351, 617 N.E.2d 808, 814 (2d Dist. 1993); *see also Image Worldwide*, 139 F.3d at 577 (discussing Illinois' interpretation of "reasonably equivalent value").

▮▮ In determining whether reasonably equivalent value was received under the UFTA, courts should consider how that phrase has been construed under the Bankruptcy Code. *Image Worldwide*, 139 F.3d at 577. The Code does not define the term "reasonably equivalent value." Whether "reasonably equivalent value" has been given is a question of fact. *Id.* at 576; *Joy Recovery*, 257 B.R. at 268; *Official Comm. of Unsecured Creditors v. Ped-*

---

**3.** 740 ILCS 160/4(b) sets forth a definition for "reasonably equivalent value" that does not apply to this matter.

*ersen & Houpt (In re Crystal Med. Prods., Inc.)*, 240 B.R. 290, 300 (Bankr.N.D.Ill. 1999). The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir.1997). That determination will depend on all the facts of each case. *Id.* Several factors that have been utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Id.; Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 773 (Bankr.N.D.Ill.1999). "Reasonably equivalent value is measured at the time of the transfer." *Mussa*, 215 B.R. at 172. Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. *Image Worldwide*, 139 F.3d at 580.

The elements of a cause of action under § 6(a) of the UFTA are: (1) a transfer was made by the debtor; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer. *Joy Recovery*, 286 B.R. at 77; *Joy Recovery*, 257 B.R. at 271; *In re Liquidation of MedCare HMO, Inc.*, 294 Ill.App.3d 42, 50, 228 Ill.Dec. 502, 689 N.E.2d 374, 380 (1st Dist.1997); *Falcon v. Thomas*, 258 Ill.App.3d 900, 909, 196 Ill. Dec. 244, 629 N.E.2d 789, 795 (4th Dist. 1994). One difference between § 160/6 and § 160/5 of the UFTA is that § 160/6 includes the requirement that a creditor who has the right to assert some claim must have a claim that arose before the alleged fraudulent transaction. *Joy Recovery*, 286 B.R. at 77. Further, intent is not an element under § 160/6(a). *Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 719 (7th Cir.2002).

The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS 160/3(a). This definition of insolvency mirrors the balance-sheet test for insolvency under the Bankruptcy Code. 11 U.S.C. § 101(32). The UFTA also provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." 740 ILCS 160/3(b).

### 1. 740 ILCS 160/5(a)(1)

First, the Court will address the Trustee's claim that the transfers of the Property by the Zeiglers to the Lagros constituted fraud in fact or actual fraud pursuant to § 5(a)(1) of the UFTA. Under § 5(a)(1), a transfer can be fraudulent if it was made with "actual intent to hinder, delay, or defraud" creditors. Colleen Lagro testified that the transfers were made to help the Zeiglers plan their estate because of their declining health. She further stated that the October 2000 transfer was made to allow the Lagros to refinance the Property and pay the Zeiglers' existing mortgage which encumbered the Property. Additionally, Colleen Lagro testified that at the time of the May 2000 transfer, the Zeiglers were in financial straits because of Lavon Zeigler's extensive medical bills. Her testimony was the only evidence adduced at trial regarding the Zeiglers' intent at the time of the transfers.

Because there is rarely direct evidence of the intent underlying a transfer of property, courts look to circumstantial evidence, referred to as the badges of fraud, in determining whether a transfer was intended to hinder, delay or defraud creditors. At this point, it is helpful to analyze the evidence in terms of the eleven

"badges of fraud," many of which are not present in this matter: (1) the transfers were made to insiders—the Zeiglers' daughter and her husband; (2) the Zeiglers retained possession of the Property after the transfers—they continue to live in the home; (3) the transfers were recorded in DuPage County, Illinois, and were disclosed to the Trustee at the § 341 meeting; (4) there was no evidence that the Zeiglers had been sued or threatened with suit before the transfers were made; (5) the Zeiglers did not abscond; (6) the Zeiglers did not conceal assets, but they did remove the Property from their ownership by conveying it to their daughter and son-in-law in October 2000; (7) there was no evidence that the transfers occurred shortly before or after a substantial debt was incurred; and (8) the Zeiglers did not transfer the essential assets of a business to a lienor who transferred the assets to an insider of the Zeiglers. The three remaining badges of fraud—whether the Zeiglers were insolvent or became insolvent shortly after the transfers were made, whether the value of the consideration received by the Zeiglers was reasonably equivalent to the value of the Property transferred, and whether the transfers of the Property were of substantially all of the Zeiglers' assets—warrant a more detailed discussion.

First, with respect to whether the Zeiglers were insolvent or became insolvent shortly after the transfers were made, the Trustee testified that he investigated the Zeiglers' financial condition. Specifically, the Trustee testified that the Zeiglers had in excess of $18,000.00 in credit card debt at the time of the October 2000 transfer.

After that transfer, the Zeiglers' bank account statements showed a checking account balance of $18.59 and a savings account balance of $1,514.38. Trustee Ex. No. 8. The Trustee testified that after reviewing the Zeiglers' bank statements and credit card statements, he concluded that the Zeiglers were balance-sheet insolvent immediately after the October 2000 transfer. He further testified that the May 2000 transfer caused one-third of the Property to be given away and that the October 2000 transfer was a complete divestiture of the Zeiglers' interest in the Property to the detriment of their creditors.

In their written closing arguments, which were filed after the trial, the Zeiglers and the Lagros contend that the Zeiglers were not balance-sheet insolvent at the time of the transfers of the Property or as a result of the transfers. Specifically, they argue that the Zeiglers' social security and pension fund annual income would total $27,774.00 for the year and that their bank statements reflected funds in the sum of $518.08 [4] for total assets of $28,292.08. Further, they maintain that the Zeiglers' outstanding aggregate credit card debt at the relevant time totaled $12,922.42 and that they had monthly aggregate expenses of $1,538.00 for total liabilities of $14,460.42. Based upon these figures, the Zeiglers conclude that their total assets of $28,292.08 exceeded their liabilities of $14,460.42, and, thus, they contend that they were not balance-sheet insolvent at the time of the October 2000 transfer.

---

4. As noted *supra*, the evidence demonstrates that the Zeiglers' checking account statement showed an ending balance of $18.59 for the period September 23, 2000 through October 24, 2000 and that their savings account statement showed an ending balance of $1,514.38 for the period September 25, 2000 through October 24, 2000. Trustee Ex. No. 8. Hence, the Court takes issue with the $518.08 figure that the Zeiglers claim was in their accounts as of October 2000.

■ The Court finds this analysis flawed. In order to determine solvency on a balance-sheet basis, a snapshot must be taken of a debtor's financial situation at the time of the transfer or shortly after the transfer, and the extant liabilities must be subtracted from the existing assets. In the matter at bar, the Zeiglers attempt to determine their net assets based on their annualized disposable income. This analysis incorrectly counts income at the time of the transfers that had yet to be earned or received. Thus, the Zeiglers' determination that their assets included their total unearned yearly income is incorrect when analyzing solvency for balance-sheet purposes. Accordingly, based upon the uncontroverted testimonial evidence from the Trustee as well as the documentary evidence, the Court finds that the Zeiglers were rendered balance-sheet insolvent by the transfers of the Property.

Next, turning to whether the value of the consideration received by the Zeiglers was reasonably equivalent to the value of the Property transferred, the Court finds that based on the evidence adduced at trial, the Zeiglers did not receive a reasonably equivalent value for the transfers. In October 2000, the Property had an appraised fair market value of $185,000.00. Trustee Ex. No. 6. At that same time, the Lagros refinanced the Property and paid an existing mortgage on the Property owed by the Zeiglers in the sum of $80,578.43. Trustee Ex. No. 7. Thus, the Court finds that the net equity in the Property transferred to the Lagros by the Zeiglers through both transfers was $104,421.57 ($185,000.00—$80,578.43 = $104,421.57).

Based upon their conduct, the Zeiglers and the Lagros knew that the value of the consideration received by the Zeiglers— the payoff of their existing mortgage—was not reasonably equivalent to the value of the Property. Colleen Lagro testified that neither she nor William Lagro paid any money to the Zeiglers at the time of the May and October 2000 transfers. Indeed, the Zeiglers and the Lagros sought to exempt the transfers of the Property from their State of Illinois real estate transfer taxes. See 35 ILCS 200/31–45(e). In fact, on both quit claim deeds evidencing the May and October 2000 transfers, the Zeiglers and Colleen Lagro made affirmative statements that the transfers were for less than $100.00 in consideration. Trustee Ex. Nos. 3 & 4. In addition, Colleen Lagro executed the claimed exemption on the October 2000 quit claim deed.

Despite this evidence, the Zeiglers and the Lagros maintain that the Zeiglers did in fact receive reasonably equivalent value for the transfers of the Property. The Lagros both testified that prior to October 2000, they made several mortgage and real estate tax payments on the Property. Specifically, Colleen Lagro stated that she and her husband paid over $30,000.00 in mortgage and real estate tax payments on the Property. William Lagro further testified that prior to the October 2000 transfer, he paid for certain concrete landscape work on the Property in the aggregate sum of $18,000.00 to $19,000.00. However, the Lagros failed to provide any documentation at trial to corroborate this testimony regarding payment of the mortgage or real estate taxes that they allegedly made for the Zeiglers, the improvements allegedly made to the Property, or the precise time when the same were paid.

In their written closing arguments, the Zeiglers and the Lagros attempt to quantify the total amount that the Lagros paid over the years for the real estate taxes and the mortgage payments on the Property. Specifically, the Lagros contend that they paid $39,510.00 in real estate taxes on the Property for the ten years from 1990

through 2000. Unfortunately for the Lagros, however, this figure is not based on any corroborating documentary evidence. Rather, this figure is derived from an assumption that the annual average real estate tax payment would have been $3,951.00. There is absolutely no evidentiary basis to support this amount. The Court finds that the Lagros have not demonstrated, based on the evidence in the trial record, that they paid $39,510.00 in real estate taxes on the Property.

Similarly, the Lagros contend that they have paid $17,711.38 in mortgage payments on the Property from December 1998 through October 2000. They point to the Zeiglers' saving account statement from September 25, 2000 through October 24, 2000, which shows a withdrawal from the account in the sum of $770.06 for a mortgage payment. Trustee Ex. No. 8. Based on this single mortgage payment withdrawal, the Lagros conclude that they made $17,711.38 in mortgage payments on the Property. The Court finds that the evidence admitted at trial does not conclusively or convincingly support the Lagros' contention.

Thus, the Court finds that the Zeiglers and the Lagros have failed to demonstrate that the Zeiglers received a reasonably equivalent value for the transfers of the Property. Accordingly, based on the evidence admitted at trial, the Court finds that the Zeiglers did not receive a reasonably equivalent value for the transfers.

Finally, the Court must determine whether the transfers of the Property were of substantially all of the Zeiglers' assets. Jennie Zeigler testified that she and Lavon Zeigler had no stocks, bonds or other real estate at the time of the transfers. Colleen Lagro corroborated this testimony. Based on this uncontroverted testimony as well as the other financial data discussed above, the Court finds that the May 2000 and October 2000 transfers of the Property conveyed the Zeiglers' main asset, their home, and, thus, were transfers of substantially all of their assets.

In sum, there are six "badges of fraud" present in this matter: (1) the transfers were made to insiders—the Zeiglers' daughter and son-in-law; (2) the Zeiglers retained possession of the Property after the transfers; (3) the Zeiglers removed the Property from their ownership by conveying it to the Lagros; (4) the Zeiglers were insolvent or became insolvent shortly after the transfers were made; (5) the value of the consideration received by the Zeiglers was not reasonably equivalent to the value of the Property transferred; and (6) the transfers of the Property were of substantially all of the Zeiglers' assets.

Despite the presence of these six indicia, the Court finds that an insufficient number of the badges exists to give rise to an inference that the Zeiglers' actually intended to hinder, delay or defraud their creditors. The Court has no reason to disbelieve the undisputed testimony of Colleen Lagro that the transfers were made by the Zeiglers in an attempt to effectuate some estate planning as a result of their deteriorating health and advanced age. Unfortunately for the Zeiglers, however, the act of transferring the Property to the Lagros only caused them problems and failed to help them effectively plan their estate. Rather, the transfers resulted in this adversary proceeding for the Zeiglers to defend. In short, the Court finds that the Trustee failed to demonstrate that the transfers of the Property were made by the Zeiglers with actual intent to hinder, delay or defraud their creditors. Hence, the Trustee has not sustained a cause of action under § 160/5(a)(1).

### 2. 740 ILCS 160/5(a)(2)

Next, the Court must determine whether the transfers were constructively

fraudulent under § 160/5(a)(2) of the UFTA. Under this alternative theory, the Trustee must show that the Zeiglers made the transfers without receiving a reasonably equivalent value in exchange for the transfers. The Court finds that the Trustee has met all of the elements to establish a cause of action under § 5(a)(2). The Zeiglers do not dispute that they made voluntary transfers to the Lagros and that at the time of the transfers, they incurred obligations to various creditors. Trustee Ex. Nos. 15–22. Moreover, as previously discussed, the Zeiglers made the transfers to the Lagros without receiving a reasonably equivalent value. Merely paying off the Zeiglers' mortgage was inadequate and left the Lagros with over $100,000.00 in equity in the Property. In addition, the Court finds that after the transfers, the Zeiglers failed to retain sufficient property to pay their debts. The Property was the single largest asset of the Zeiglers. The Trustee testified that the Zeiglers had in excess of $18,000.00 in credit card debt at the time of the October 2000 transfer and had only approximately $2,000.00 in their checking and savings accounts. Hence, as previously noted, the October transfer rendered the Zeiglers balance-sheet insolvent and left them with insufficient property to pay their debts. Consequently, the Court holds that the Trustee has demonstrated that the transfers were constructively

fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfers are avoidable under § 544(b)(1).

 When a transfer is avoided under § 544(b)(1), the next step is for the Court to look to § 550(a), which provides that a trustee may recover "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer...." 11 U.S.C. § 550(a)(1). The Court holds that the Trustee may recover the Property from the Lagros, the initial transferees, for the benefit of the Zeiglers' estate or the value of such Property [5] from the Lagros for the benefit of the Zeiglers' estate, less the cost of improvements made by the Lagros on and after October 24, 2000 pursuant to 11 U.S.C. § 550(e)(1).[6]

### 3. 740 ILCS 160/6(a)

Finally, the Trustee seeks to avoid the transfers to the Lagros pursuant to § 160/6(a) of the UFTA. The Trustee contends that the Zeiglers received less than reasonably equivalent value in exchange for the transfers and were insolvent at the time of the transfers or became insolvent as a result of the transfers.

 The Court finds that the Trustee has demonstrated all of the requisite elements to sustain a cause of action under

---

**5.** Based upon the fair market appraisal of the Property at the time of the October 2000 transfer, the uncontested value of the Property is $185,000.00. Trustee Ex. No. 6.

**6.** Section 550(e) provides:
 (1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
 (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

 (B) any increase in the value of such property as a result of such improvement, of the property transferred.
 (2) In this subsection, "improvement" includes—
 (A) physical additions or changes to the property transferred;
 (B) repairs to such property;
 (C) payment of any tax on such property;
 (D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and
 (E) preservation of such property.
11 U.S.C. § 550(e).

§ 160/6(a). First, the Trustee has shown, and the Zeiglers do not dispute, that creditors who had the right to assert claims still have claims that arose before the alleged fraudulent transactions. Specifically, the Trustee produced credit card statements that showed debts owing by the Zeiglers to numerous creditors prior to the transfers. Trustee Ex. Nos. 15–22. Second, as previously discussed, the Trustee established that the Zeiglers made the transfers without receiving a reasonably equivalent value in exchange for the transferred Property. Finally, the Court previously determined that the Zeiglers were insolvent at the time of the transfers or became insolvent as a result of the transfers. Therefore, the Trustee has established all of the elements necessary to sustain a cause of action under § 160/6(a) of the UFTA. As such, the transfers are avoidable under § 544(b)(1). Pursuant to § 550(a)(1), the Trustee may recover the Property from the Lagros, the initial transferees, for the benefit of the Zeiglers' estate or the value of such Property from the Lagros for the benefit of the Zeiglers' estate.

## B. *Count II of the Complaint—Sale of the Property*

Pursuant to Count II of the complaint, the Trustee seeks to sell the Property under 11 U.S.C. § 363(b)(1), § 363(f) and § 363(h). The relevant portions of § 363 provide as follows:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.
>
> . . .
>
> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
>
> . . .
>
> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of

natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(b)(1), (f) and (h).

■■■ Section 363(b)(1) authorizes a trustee to sell property other than in the ordinary course of business after notice and a hearing. Indeed, the trustee must petition the court for approval to pursue the sale of a debtor's property. *In re Vlasek*, 325 F.3d 955, 961 (7th Cir.2003). Federal Rule of Bankruptcy Procedure 6004(a) provides in pertinent part that "[n]otice of a proposed use, sale, or lease of property ... not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k)...." Fed. R. Bankr.P. 6004(a). Federal Rule of Bankruptcy Procedure 2002(a)(2) in turn provides that a twenty-day notice must be sent to all parties in interest, and subsection (c)(1) states that the notice of a proposed sale of property "shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr.P.2002(a)(2) & (c)(1). Bankruptcy Rule 2002(i) and (k) respectively provide that copies of all notices must be sent to any committees elected, as well as to the United States trustee.

In determining whether to approve a proposed sale under § 363(b)(1), courts have applied a variety of standards, including a business judgment test, *In re Condere Corp.*, 228 B.R. 615, 630 (Bankr. S.D.Miss.1998); *WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 102 (Bankr.E.D.Va. 1995), a good faith test determining whether the sale is fair and equitable, *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr.D.Del.1987), and a test to assess whether the transaction is in the best interest of the estate, *In re Stein*, 281 B.R. 845, 852 (Bankr.S.D.N.Y.2002). The Seventh Circuit Court of Appeals has stated that there must be an "articulated business justification" for the sale. *In re Schipper*, 933 F.2d 513, 515 (7th Cir.1991). The Trustee contends that the sale of the Property is in the best interest of the Zeiglers' estate because the sale would result in the payment in full to all of the Zeiglers' unsecured creditors.

■■■ Turning to the Trustee's request to sell the Property under § 363(f), the Court must examine the requisite elements. Section 363(f) permits the sale of the Property free and clear of any interest in the Property of an entity other than the Zeiglers' estate upon satisfaction of any one of the following conditions: nonbankruptcy law would permit a sale of the Property free of the lien holder's interest; the lien holder consents; the lien holder's interest is a lien and the price at which the Property is to be sold is greater than the aggregate value of all liens on such Property; the lien holder's interest is in bona fide dispute; or the lien holder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See* 11 U.S.C. § 363(f); *In re Bobroff*, 40 B.R. 526, 528 (Bankr.E.D.Pa. 1984); *Mut. Life Ins. Co. v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*, 36 B.R. 856, 858 (Bankr.W.D.Mo.1984).

■■■ The Trustee has failed to specify under which of the above-cited conditions the sale of the Property would be appropriate. It is undisputed that the Bank currently holds a mortgage on the Property, although the exact amount has not been provided to the Court. The Bank, however, has not answered the complaint, and the Trustee has not sought a default judgment against the Bank. The Trustee has failed to develop his position under § 363(f) and has not cited any case authority in support of the relief requested. Perfunctory and undeveloped arguments, as well as arguments that are un-

supported by pertinent authority, are waived. *See United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir.), *cert. denied,* 530 U.S. 1277, 120 S.Ct. 2746, 147 L.Ed.2d 1009 (2000) (collecting cases). The Court does not have a duty to research and construct legal arguments available to a party. *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11,* 46 F.3d 629, 635 (7th Cir.1995). Failure to cite any supporting case citation or authority results in forfeiture of the point. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Vill. of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). As the Seventh Circuit Court of Appeals has stated, " '[j]udges are not like pigs, hunting for truffles buried in' the record." *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.,* 309 F.3d 433, 436 (7th Cir.2002), *cert. denied,* 539 U.S. 941, 123 S.Ct. 2606, 156 L.Ed.2d 626 (2003) (*quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). Based on the Trustee's failure to support the relief requested under § 363(f), the Court strikes such request.

■ Finally, turning to the Trustee's request to sell the Property under § 363(h), the Court must examine the statutory requirements. Section 363(h) permits a trustee to sell both the estate's interest and the interest of any co-owner in property in which the debtor had an undivided ownership interest, such as a tenancy in common, joint tenancy, or tenancy by the entirety. *In re Livingston,* 804 F.2d 1219, 1221 (11th Cir.1986). Such a sale is permissible only if the following elements have been met: (1) partition is impracticable; (2) sale of the estate's interest would realize significantly less for the estate than sale of the property free of the interest of the co-owners; (3) the benefit to the estate of such sale outweighs any detriment to the co-owners; and (4) the

property is not used in the production, transmission or distribution for sale of electric energy or of natural or synthetic gas for heat, light or power. *See In re Reed,* 940 F.2d 1317, 1323 n. 8 (9th Cir. 1991).

■ The burden of proving each of these statutory conditions is on the trustee. *Mostoller v. Kelley (In re Kelley),* 304 B.R. 331, 337 (Bankr.E.D.Tenn.2003); *Gonzales v. Beery (In re Beery),* 295 B.R. 385, 396 (Bankr.D.N.M.2003); *Hunter v. Levesque (In re McCoy),* 92 B.R. 750, 751 (Bankr.N.D.Ohio 1988). Once the trustee makes a prima facie case demonstrating that the estate would benefit from the sale of the property, however, the burden shifts to the party opposing the sale to show why the sale should not be approved. *Gazes v. Roswick (In re Roswick),* 231 B.R. 843, 847 (Bankr.S.D.N.Y.1999).

■ As discussed above, the transfers of the Property from the Zeiglers to the Lagros have been avoided. Thus, the Court finds that the Property belongs to the Zeiglers' bankruptcy estate, subject to the Lagros' claim for improvements made thereto under § 550(e). Section 363(h) applies to property that a trustee recovers under the Bankruptcy Code's avoiding powers. *See generally McCoy,* 92 B.R. 750 (trustee recovered fraudulently transferred property, leaving transferee with only a possessory interest). Because the transfers to the Lagros have been avoided, the Lagros have nothing more than a possessory interest in the Property and their claim under § 550(e).

■ The first element under § 363(h) requires the Trustee to show that partition of the Property is impracticable. It is undisputed that the Property is a single family residence occupied by both the Zeiglers and the Lagros. Where property is a single family residence, there is

no practicable manner of partition other than a sale and division of the proceeds. *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935 (Bankr.S.D.Fla.1991) (*citing Morris v. Ivey (In re Ivey)*, 10 B.R. 230 (Bankr.N.D.Ga.1981)). Because it is undisputed that the Property is a single family residence, absent evidence to the contrary, the Trustee has met his burden of proof as to § 363(h)(1). *See Voiland v. Gillissie (In re Gillissie)*, 215 B.R. 370, 380 (Bankr.N.D.Ill.1997); *Berland v. Gauthreaux (In re Gauthreaux)*, 206 B.R. 502, 505 (Bankr.N.D.Ill.1997); *Griffin*, 123 B.R. at 935.

The second element under § 363(h) appears to also have been met. It is generally accepted that the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers of the property, especially when the co-owners can continue to live on the property. *Gillissie*, 215 B.R. at 380 (court took judicial notice that a sale of the estate's undivided one-half interest would realize substantially less than a sale of the property free of the interest of the co-owner); *Gauthreaux*, 206 B.R. at 506 (same); *Griffin*, 123 B.R. at 935–36 (same); *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 807–08 (Bankr.D.Mass. 1987) (same); *see also Armstrong v. Trout (In re Trout)*, 146 B.R. 823, 829 (Bankr. D.N.D.1992). Absent evidence to the contrary, the Court takes judicial notice of the foregoing economic reality and finds that the Trustee has met his burden of proof as to § 363(h)(2).

The third condition of § 363(h) is that the benefit to the estate from the proposed sale must outweigh the detriment to the co-owner. When determining whether the benefit to the estate out-

weighs the detriment to the co-owner, courts must consider the economic and emotional detriment that the co-owner may face. *Trout*, 146 B.R. at 829; *Griffin*, 123 B.R. at 936 (collecting cases). Courts have defined "detriment" as economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement. *Trout*, 146 B.R. at 829. Payment of a significant dividend to creditors from the sale of property is a substantial benefit to the estate. *Vassilowitch*, 72 B.R. at 807; *Ivey*, 10 B.R. at 232–33. Where the benefit to the estate is small or speculative and the impact on the co-owner's life is large, courts have denied a trustee's request to sell a personal residence. *Gauthreaux*, 206 B.R. at 506–07; *Trout*, 146 B.R. at 830; *Griffin*, 123 B.R. at 936; *McCoy*, 92 B.R. at 753.

The Trustee testified that the sale of the Property at the fair market value of $185,000.00, less the improvements made by the Lagros under § 550(e), would result in payment in full to all of the Zeiglers' creditors. The Zeiglers and the Lagros did not introduce any evidence to rebut the Trustee's testimony. In fact, in their written, post-trial submission, the Zeiglers and the Lagros failed altogether to address the Trustee's requested relief under § 363. On this record, it would not be equitable to insulate the Property from all of the claims of the Zeiglers' unsecured creditors. Thus, the Trustee has demonstrated this element under § 363(h)(3).

Finally, it is undisputed that the Property is not used in the production, transmission or distribution for sale of electric energy or of natural or synthetic gas for heat, light or power. Hence, the Trustee has met his burden of proof as to § 363(h)(4).

In sum, the Court finds that the Trustee has demonstrated all of the necessary elements under § 363(h). Accordingly, the

Court authorizes the Trustee to sell the estate's interest in the Property. The Bankruptcy Code provides certain protections based on notice of the proposed sale required under Federal Rules of Bankruptcy Procedure 2002 and 6004. Either the Zeiglers or the Lagros or both can seek to purchase the estate's interest in the Property from the Trustee, and, generally, the highest and best offer will be the accepted offer.

## C. *The Trustee's Motion for Sanctions Against the Zeiglers*

On June 25, 2004, the Trustee served upon the Zeiglers his first request for admissions. The Zeiglers failed to respond to the request for admissions. As a result, the Trustee filed a motion to compel the Zeiglers to respond to the discovery requests. Thereafter, on October 29, 2004, the Court entered an order compelling the Zeiglers to comply with certain discovery requests propounded by the Trustee. In addition, the Court ordered the Zeiglers to pay the Trustee the reasonable costs and fees incurred in obtaining compliance with the discovery requests. The Court reserved ruling on the costs and fees pending submission of the costs and fees incurred by the Trustee. On November 15, 2004, the Trustee's attorney, Arthur W. Rummler, submitted an affidavit detailing the time expended in obtaining the Zeiglers' compliance with the discovery requests. The affidavit set forth an hourly rate of $225.00 and documented 5.10 hours of time expended totaling $1,147.50. The Court finds this sum reasonable and orders the Zeiglers to pay that amount to the Trustee forthwith as a sanction pursuant to Federal Rule of Bankruptcy Procedure 7037 and Federal Rule of Civil Procedure 37(d) for their failure to comply with the Trustee's discovery requests.

## IV. *CONCLUSION*

For the foregoing reasons, the Court denies the motion of the Zeiglers and the Lagros for directed findings. The Court grants judgment in part under Count I of the complaint in favor of the Trustee and holds that the transfers of the Property from the Zeiglers to the Lagros were constructively fraudulent pursuant to 740 ILCS 160/5(a)(2) and 740 ILCS 160/6(a). Under § 544(b)(1), the Trustee may avoid the transfers of the Property made by the Zeiglers to the Lagros. Pursuant to § 550(a)(1), the Court authorizes the Trustee to recover the Property for the benefit of the Zeiglers' estate or the value of such Property in the sum of $185,000.00, less the cost of improvements made by the Lagros on and after October 24, 2000 pursuant to § 550(e)(1). Further, pursuant to Count II of the complaint, the Court grants judgment in part in favor of the Trustee and authorizes him to sell the Property pursuant to § 363(b)(1) and § 363(h). Finally, as a sanction for the Zeiglers' failure to comply with certain discovery requests made by the Trustee, the Court orders the Zeiglers to pay the reasonable attorney's fees incurred by the Trustee in the sum of $1,147.50.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.